## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

SHAWN THOMAS,

      **Plaintiff,**

-VS-

DEVIN KEITH, *et al*,

      **Defendants.**

:    **CASE NO.**    **1 : 25 CV 0 1 7 0 4**

:    **JUDGE**     **JUDGE CALABRESE**

:      **MAG. JUDGE GREENBERG**

FILED

AUG 15 2025

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO CLEVELAND

---

## COMPLAINT WITH JURY DEMAND

### I.    JURISDICTION AND VENUE

1. This is a Civil Action authorized pursuant to 42 U.S.C. § 1983 to redress the deprivations under color of state law, of rights secured by the United States Constitution. This Court has Jurisdiction pursuant to 28 U.S.C. § 1331, which provides that anyone stating facts raising a federal cause of action has the right to file in federal court a civil rights action stating claims arising under the Constitution, Laws or Treaties of the United States, and 28 U.S.C. § 1343, which provides a federal court forum in which citizens may seek redress from the deprivation of rights, privileges and immunities under color of state law. The Civil Rights Act, 42 U.S.C. § 1983 - § 1986, that provides a federal remedy to anyone suffering from violations of his or her civil rights under the color of state law, while 42 U.S.C. § 1985 deals with conspiracy and interference with civil rights, based upon the conspiracy by those relevant Defendants that repeatedly violated the Plaintiff's civil rights. 42 U.S.C. § 1986, provides for damages from those relevant Defendants who had knowledge of the violations of the Plaintiff's civil rights, who had the duty and the ability to prevent and/or aid in the prevention of them, and who failed to do so, and who failed to perform their duty. Plaintiff Shawn Thomas, hereinafter ("Thomas"

(or) "Plaintiff") seeks Declaratory Relief pursuant to 28 U.S.C. § 2201 and § 2202, which provides for federal courts to declare rights and legal relations that are in controversy and remedy thereof. Thomas's claims for Injunctive Relief are authorized pursuant to 28 U.S.C. § 2283 and § 2284 and Rule 65 of the Federal Rules of Civil Procedure, hereinafter ("FRCP"). Attorney fees are awarded pursuant to 42 U.S.C. § 1988. United States Constitution and specifically the First Amendment to Petition the Government for a Redress of Grievance; the Eighth Amendment Right to be Free from Cruel and Unusual Punishment and Use of Excessive Force; and the Fourteenth Amendment Right to Due Process and Equal Protection of the Law; and Article IV. § 1 – Privileges and Immunities Clause. 28 U.S.C. § 1367 entails for state tort claims, if any exist and 42 U.S.C. § 1988 which governs attorney fees and costs incurred with litigation in civil rights litigation. 28 U.S.C. § 1923 governs those costs and fees necessarily detained from litigation from civil cases. The matters related to those federal civil rights and state tort claims, if any, exceeds Seventy-Five Thousand Dollars and Zero Cent ($75,000.00). The First Amendment as of right, pursuant to FRCP 3, relates to the respective parties below in (§ III., ¶¶ 5 – 14), and the claims set forth in this Complaint, incorporates by way of reference each of those claims so set forth herein this Complaint and the Supreme Court ruled in Walker v. Armco Steel Corp., 446 U.S. 740, 64 L. Ed. 2d 659, 100 S. Ct. 1978 (1980), that in federal diversity cases, state law controls for the purpose of determining the commencement and duration of statute of limitations. All named Defendant's listed herein this Complaint are and were involved in the violations of the Plaintiff's Constitutional Rights and were fully aware of their actions and were given the opportunity to solve these problems through the § 1997(e) process of the prisoner grievance process provided by the institution before a prisoner can seek out a lawsuit in the federal courts. All of the Plaintiff's Institutional Complaints were Denied,

2

Rejected, and/or Ignored by the investigating party most responsible. These Institutional Complaints were denied with very little to no investigation whatsoever taking place and the seriousness of these Complaints were and are overlooked by the Institutional Staff with very much irresponsibility and care to the prisoner complaint. The violations of the Plaintiff's Constitutional Rights under the First Amendment's Prohibition "The Right to Enjoy Life, Liberty, Freedom of Speech, Communication with the Press, Correspondence", along with the Eighth Amendment's Prohibition of the "Right to be Free from Cruel and Unusual Punishment" and the "Use of Excessive Force" along with the Fourteenth Amendment's Prohibition "Right to Due Process" and "Equal Protection of the Laws" have been violated by these individual/Defendants named in (§ III., ¶¶ 5 – 14). All of these Claims are brought pursuant to 42 U.S.C. § 1983, in the connection with the violations of the Plaintiff's Constitutional Rights that were violated by the Defendants listed in (§ III., ¶¶ 5 – 14) herein this Complaint. Each and every Defendant listed in (§ III., ¶¶ 5 – 14) herein this Complaint had personal involvement and knowledge of the violations of the Plaintiff's Constitutional Rights and due to some, but not all Claims herein this Complaint left the Plaintiff injured physically, mentally and emotionally. Each and every Defendant listed in (§ III., ¶¶ 5 – 14) in this Complaint made voluntary decisions on their own accord and in their job capacities that left the Plaintiff's Constitutional Rights to be violated and for the Plaintiff to be injured physically, mentally and emotionally.

2. The Northern District of Ohio is an appropriate venue under 28 U.S.C. § 1391(b)(2) because it is where the events giving rise to this claim occurred.

## II. PLAINTIFF

3

3. Thomas is and was at all times mentioned herein this Complaint a prisoner of the State of Ohio in the custody of the Ohio Department of Rehabilitation and Correction ("ODRC").

4. Thomas is currently confined in the Richland Correctional Institution ("RICI") located in Mansfield, Ohio.

### III.   DEFENDANTS

5. Devin Keith ("Keith") is a Corrections Officer ("C/o") at the RICI who, at all times mentioned herein this Complaint, held the rank of Lieutenant for RICI. Keith was in charge of supervising and maintaining control of RICI's Segregation Unit. Keith now holds the rank of Mailroom Lieutenant currently.

6. John Doe #1 ("Doe #1") is a C/o at the RICI who, at all times mentioned herein this Complaint, held the rank of C/o for RICI. Doe #1 was in charge of supervising and maintaining control of RICI's Segregation Unit. (Black Officer, 6ft – 4in, 225lbs or so, hat)

7. John Doe #2 ("Doe #2") is a C/o at the RICI who, at all times mentioned herein this Complaint, held the rank of C/o for RICI. Doe #2 was in charge of supervising and maintaining control of RICI's Segregation Unit. (White Officer, 5ft – 11in, 250lbs or so, hat)

8. Steven Mandusic ("Mandusic") is a C/o at the RICI who, at all times mentioned herein this Complaint, held the rank of C/o for RICI. Mandusic was in charge of supervising and maintaining control of RICI's 5 Lower Housing Unit.

9. Debra Shrader ("Shrader") is a C/o at the RICI who, at all times mentioned herein this Complaint, held the rank of Sergeant for RICI. Shrader was in charge of supervising and maintaining control of RICI's 5 Lower Housing Unit.

4

10. April Robinson ("Robinson") is a C/o at the RICI who, at all times mentioned herein this Complaint, held the rank of Unit Manager for RICI. Robinson was in charge of supervising and maintaining control of RICI's 5 Lower Housing Unit.

11. Rineholdt ("Rineholdt") is a C/o at the RICI who, at all times mentioned herein this Complaint, held the rank of Secretary for RICI. Rineholdt was in charge of supervising and maintaining control of RICI's 5 Lower Housing Unit.

12. Douglas G. Smith ("Smith") is a C/o at the RICI who, at all times mentioned herein this Complaint, held the rank of Principal for RICI. Smith was charge of supervising and maintaining control of RICI's Education Department and Legal Library Services.

13. M. Johnston ("Johnston") is a C/o at the RICI who, at all times mentioned herein this Complaint, held the rank of Librarian for RICI. Johnston was charge of supervising and maintaining control of RICI's Legal Library Services.

14. K. Sipes ("Sipes") is a C/o at the RICI who, at all times mentioned herein this Complaint, held the rank of Lieutenant for RICI. Sipes was charge of supervising and maintaining control of RICI's Segregation Unit.

15. Each Defendant listed *supra*, in ¶¶ 5 – 14 are sued individually and in his/her official capacity. At all times mentioned herein this Complaint, each Defendant acted under color of state law.

## IV.   FACTS

### A. EIGHTH AMENDMENT CLAIM – USE OF EXCESSIVE FORCE CLAIM

#### a. DEVIN KEITH

1. On August 10, 2023, the Plaintiff was taken into an observation cell per Medical and Mental Health Dr. Mr. Michaels due Thomas' mental state of mind.[1]

---

[1]   On July 28, 2023, Christopher James Thomas was involved in a fatal motorcycle accident that had taken place in Columbus, Ohio. Plaintiff was notified of his brother's death via phone conversation with Plaintiff's

2. Thomas had not been sleeping well in the institution due to the tragic accident and heart breaking news along with what had just taken place involving his younger brother.

3. Thomas was told by Mental Health Dr. Mr. Michaels to "just go cry yourself to sleep for the night" and that Thomas would be seen the following day.

4. Thomas listened to Mental Health Dr. Mr. Michaels and accepted being put into an observation cell for the night and Thomas willingly went into cell L2-153 like Thomas was asked to by Mental Health Dr. Mr. Michaels and Thomas did cry himself to sleep.

5. The cell door to these observation cells are completely "see through" (or) "clear". These clear see through doors for the observation cells are also approximately "7 feet tall x 4 feet wide" or so. You can see the entire cell from the exterior hallway of these observation cells.

6. Because the cell door is completely clear and see through and nearly every inmate and officer and staff member walking by Plaintiff's cell could see right in as to what Plaintiff was doing, especially being Thomas has been at the Richland Correctional Facility for over Ten (10) years now and every staff member along with majority of the inmate prisoner population knows of or knows who Thomas is by reputation.

7. Thomas had become humiliated and embarrassed to be seen crying in the cell by his peers and staff members of the Richland Correctional Facility, Thomas laid One (1) of the Two (2) orange suicide blankets he was provided for the night onto the shower floor.

8. Plaintiff then laid down on that floor One (1) orange blanket and covered himself up with the second orange blanket he was given to block out the light from the cell because it does not turn off ever being it is an observation cell and it is designed to keep an eye on the prisoner at all

---

Mother, Tina Dubiecki, and Plaintiff's Father, John Dubiecki, which occurred on August 4, 2023 around 12:00pm from the Richland Correctional Institution's wall phone which are provided to the inmate prisoner's for making phone calls.

6

times relevant to the prisoner being in the observation cell and it is imperative to the security of the institution and the safety of the prisoner, and therefore, anyone, any staff member, any inmate, can see right into the observation cell and check on the inmate/prisoner.

9. Thomas then cried himself right to sleep on that floor.

10. Thomas was next awakened a short while later due to Officer Doe #1 grabbing Thomas by his right foot/leg and forcefully was dragging Thomas across the cell floor/shower floor.

11. Thomas has a pre-existing Gun Shot Wound ("GSW") and a lower groin hernia. Thomas also has severe nerve damage to his upper right leg/thigh area due to the GSW.

12. During the time the Officer Doe #1 and Keith were dragging the Plaintiff out of the shower and across the cell floor the Plaintiff smacked the right side of his face causing severe bruising and a headache that lasted for Four (4) – Five (5) days as a direct result of smacking the Two (2) inch high water stopper in the shower attached to the cell floor to keep the water from running out of the shower area and into the cell area.

13. Thomas was then forcefully yanked to his feet by Keith and Officer Doe #1 from the ground and escorted into the hallway of the Segregation Unit and forcefully slammed up against the wall, threatened that if he told or said anything things would get much worse for him then it already was.

14. Thomas was cuffed extremely tightly and slammed into a wall for no reason whatsoever. Thomas was nearly drug down this hallway on his tippy toes as the Officer Doe #1 viciously escorted Thomas to the holding/change-out cell.

15. Thomas was awakened to being sprayed with a chemical agent known as Oleo Capsicun Resin ("OC Pepper Spray") at approximately 11:00pm – 11:30pm on 8/10/2023, that was ill manneredly sprayed into the observation cell that Thomas was placed in and the OC Pepper

7

Spray was deployed by Keith, against Thomas, for no reason other than Keith knows who Thomas is, doesn't like Thomas preferably, and viciously sprayed Thomas spitefully, sadistically, maliciously, wantonly and in a means to cause harm, and nothing less.

16. Keith was also the leading Supervisory Officer involved in this Use of Excessive Force cell extraction in which violated Plaintiff's Eighth Amendment Right to be Free from the Use of Excessive Force and the protection of the Cruel and Unusual Punishment Clause.

17. After being slammed into a wall forcefully, and dragged on Plaintiff's tippy toes to a holding cell/change-out cell, Thomas stayed in the holding cell/change-out cell for approximately Ten (10) minutes before being approached by Medical Staff.

18. Medical Staff asked if Plaintiff was okay and Plaintiff refused to respond. Medical then willingly and effortlessly left the Segregation Unit and left the Plaintiff there in that holding cell/change-out cell.

19. After approximately Ten (10) minutes of sitting in the holding cell/change-out cell the Plaintiff was then again escorted by Officer Doe #2 back to the "same exact cell – observation cell" that he was just sprayed in and forced to go back into the cell for the remainder of the night.

20. Plaintiff was never decontaminated. Plaintiff did not receive clothing, bedding and hygiene for over Twelve (12) days, until August 21, 2023, after being viciously spayed with a chemical agent known as OC Pepper Spray – Fox Pepper Spray, in the observation cell on August 10, 2023 without being decontaminated first and procedurally, and legally, in the Segregation Unit.

21. Plaintiff was confused at the time Medical came to see him because of what had just occurred, and why it occurred, and what did Plaintiff do wrong to get sprayed like this, and therefore, for those indicating factors alone, Thomas was confused and could not respond to the Medical

team properly and Thomas could not see who they were for that exact moment and Thomas did not trust what they were about to do to him any longer.

22. Plaintiff had to seek out Mental Health Treatment starting from August 10, 2023 – July 28, 2024, and the mental and emotional and even physical damages are continuing in nature and are ongoing and these treatments with the Mental Health Services are to help the Plaintiff combat the mental and emotional frustrations that the Plaintiff was and still to this date is continuing to deal with as a direct result of these Officers segregating the Plaintiff and spraying him for no reason whatsoever at the same time Plaintiff's brother had just lost his life and the Plaintiff missed his brother's Celebration of Life/Funeral Services as a direct result of these Defendants direct actions and all because they made a mistake[2] in moving the Plaintiff from a Bottom Range Tier to an Upper Range Tier on August 10, 2023 and refused to correct their mistake.

23. As a direct result of being sprayed by Keith in the observation cell Thomas could not breath, see visually or feel properly with his hands. Thomas was now injured physically, mentally and emotionally and is to-date still undergoing duress and stress and depression and deprivations of his Constitutional Rights that were violated by all said Defendants listed herein.

24. Thomas could not breath properly because of the OC Pepper Spray Thomas had just inhaled, this OC Pepper Spray – Fox Mace, when Keith was spraying his OC Pepper Spray into Thomas' observation cell for no reason whatsoever.

25. Thomas was unconscious at the time "entry" was made by Keith and his team, Officer Doe #1 and Officer Doe #2.

---

2      On 8/10/2023 the Institution made a grave mistake and attempted to move the Plaintiff to an Upper Unit known as the 5 Upper Housing Unit. Thomas argued he could not go upstairs per medical restrictions. The institution didn't care and locked the Plaintiff in the Segregation Unit for a Refusal to Lock Conduct Report Violation.

26. Thomas was unconscious at the time "OC Pepper Spray" was deployed by Keith and Officer Doe #1 and Officer Doe #2 against the Plaintiff while he was sleeping on the floor.

27. Thomas was unconscious and sleeping on the floor when this OC Pepper Spray was deployed by Keith and, Medical left within just a minute or so after arriving and, Thomas was again never decontaminated and, Thomas was taken back to the same cell he was just sprayed in which was cell L2-153 just Ten (10) minutes after being sprayed without ever being decontaminated first.

28. Officer Doe #2 attempted to leave the Two (2) orange suicide blankets in the cell with Thomas after bringing Thomas back to that same exact cell (L2-153) in which these Officers all knew Thomas and that that cell had just been sprayed with OC Pepper Spray and it had to be decontaminated first.

29. Thomas had to literally throw the blankets out of the cell into the Segregation Unit's hallway at the Officer Doe #2 to rid the blankets of their entirety.

30. Thomas had to demand new blankets or he would have been forced to stay in that cell with those Two (2) contaminated blankets, which were never decontaminated, nor the Plaintiff for that matter, for the remainder of that night. Thomas was taken out of the observation cell for Ten (10) minutes and put right back into the same exact cell he was just sprayed in.

31. Thomas remained in that cell (L2-153) for duration of that night and was then transferred to yet another cell location located in the Segregation Unit which was L3-121 and that took place the following day around noon. Thomas was in this Segregation Unit from August 10, 2023 – September 5, 2023.

32. Thomas was sprayed with the chemical agent OC Pepper Spray – Fox Pepper Spray at approximately 11:00pm – 11:30pm on August 10, 2023 and was never given anything to use

to decontaminate himself for nearly Twelve (12) days, and on August 21, 2023, Officer Fields learned of the disturbing situation with the Plaintiff not having clothes and complaining to him of such violations that occurred and Officer Fields left and returned to Plaintiff's cell with Plaintiff's down-range pack-up (clothes and hygiene).

33. While Plaintiff was being housed in the observation cell (L2-153) on 8/10/2023 which was never decontaminated, Plaintiff cried to himself periodically due to grieving in connection with his brother's death, and in which caused Thomas severe pain and suffering and agony as a result of the tears from Plaintiff's eyes reactivating the OC Pepper Spray.

34. The OC Pepper Spray had attached itself to the Plaintiff's groin area which additionally caused Plaintiff additional severe pain and suffering from the intense burning and irritation of the skin area and whenever Plaintiff touched himself through his clothing it reactivated. This all lasted for approximately Twelve (12) days. Dating from 8/10/2023 – 8/21/2023.

35. Thomas endured this painful reaction of the OC Pepper Spray reactivating itself on the Plaintiff's skin area and groin area for a period of at least Twelve (12) days.

36. Brandon Elder #783511 was Thomas' cell mate at the time Thomas was sprayed and placed into Elder's cell in the Segregation Unit in which Plaintiff was housed in L3-121 and Elder was strongly affected by the OC Pepper Spray from when Thomas came into the cell. This was due to the fact that the OC Pepper Spray had already dried in the clothes Thomas had on and it stayed in the clothing for that entire Twelve (12) days grace period before Thomas was afforded new clothing and hygiene to wash up with per Officer Fields on August 21, 2023.

37. Thomas perceived no threat to any staff, himself or other personnel at the Institution when Thomas was sprayed willfully and in bad faith, and the actions were done sadistically, recklessly, maliciously, wantonly, intentionally, deliberately, viciously, hatefully, and the

negligent evil-seeded and ill-mannered behavior of Keith toward Thomas which caused Thomas harm, and who was sleeping under his cover on the shower floor on top of another blanket that was laid on the floor first grieving about the death of his little brother that just occurred.

38. Thomas spent Twelve (12) days without clothing, hygiene, and writing materials/stationary materials. Thomas missed the Institutional event "Yard Day" which happens and is celebrated only One (1) time per year by the Institution. Thomas missed out on the fun, the events, music and treats and games and outside conventional recreation as everyone else was enjoying, Thomas was stuck grieving in the Segregation Unit as to what the hell just happened to him in the past month.

39. On September 3, 2023 Plaintiff's family had a "Celebration of Life" which was held at the Park across the street from the Plaintiff's residential home located in Youngstown, Ohio on the Southside. Thomas missed this entire Celebration of Life with all of his brother's family and friends wishing Christopher off to heaven while the Plaintiff stayed locked up illegally for being sprayed unconstitutionally by a prison guard and missed the entire family Celebration that was prepared and paid for by the Plaintiff's parents and for the Plaintiff to be part of the Celebration of Life by his immediate family, Mother and Father, Tina and John Dubiecki.

40. Defendants can NEVER compensate or replace what the Plaintiff missed out on due to their ill willed illicit unconstitutional assault on the Plaintiff which took place at the RICI on August 10, 2023 and lasted until September 5, 2023.

41. Thomas was additionally written a conduct report for the rule violation which is attached hereto and hereby incorporated herein by reference as **Exhibit – A**. (Reference # RICI-23-006737 – Dated 8/10/2023 at 11:23pm.)

12

42. Thomas was sleeping when this event had taken place. *See*: **Exhibit – A**, Plaintiff's attached Conduct Report for further support.

43. It states in full detail that "*Be advised that this rule violation occurred in in [sic] L2-153* On the above date and time Offender Thomas had a foam try [sic] covering his window during count and was not visible by officers. When Officers attempted to make contact, he was unresponsive. When I arrived, I called him by name several times as well as knocked and kicked his door. OC was deployed and we were forced to enter the cell found him lying in the shower covered by a suicide blanket. He was then taken out of the cell to a holding cell to decontaminate and seek medical attention. When asked why he never answered officers he stated he was sleeping."

44. Thomas was never a threat to himself, the staff or any other personnel to the institution.

45. Keith unlawfully sprayed the Plaintiff.

46. This Conduct Report attached hereto as **Exhibit – A**, (Reference # RICI-23-006737, Dated 8/10/2023 at 11:23pm in the Location of the TP Unit at RICI) nor did the Plaintiff's conduct support the Rule Violations alleged within them. The Conduct Report did not support the violations. It does not describe the "Resistance of the Plaintiff" or the "Disobedience from the Plaintiff" or does it support a showing of threat perceived by the Officers.

47. The Plaintiff stayed in the Segregation Unit for a Rule Violation 5.1 – Physical Resistance to a Direct Order… where was the Physical Resistance introduced?; and a Rule Violation 5.2 – Disobedience to a Direct Order… how if the Plaintiff is sleeping when the orders are called out?; and a 16.1 – Any Act not Otherwise Set Forth Herein, Knowingly Done Which Constitutes a Threat to the Security of the Institution, its Staff, other Incarcerated Persons, or

to the Acting Incarcerated Person... the Plaintiff was again sleeping, so how did the Plaintiff violate these rule infractions?

48. These rule infractions are bogus and falsified and fraudulent. The institution could not find Thomas guilty of these rule infractions if taken seriously in their kangaroo court called RIB.

49. Thomas was discriminated against by the Chairman's of the RIB Committee which will later be discovered through an Amended Complaint. They are State Agents/Actors who names are Samantha Daugherty, R. Hayes, T. Adkins, J. Hickman, Dr. Cornwell.

50. In an observation cell guards are to make their rounds every Fifteen (15) minutes to check on the prisoner to make sure they are alive and safe and okay.

51. Had the guards been doing their jobs instead of playing on their cell phones all night they would have recognized that Thomas was sleeping in the shower area on the floor for the past Two (2) hours or so.

52. Because the guards failed to carry out their job assignment and lost the Plaintiff in an observation cell they became afraid of the consequences and sprayed the Plaintiff and turned the consequences onto the Plaintiff as if he deserved the use of excessive force that was applied to him when Plaintiff was sprayed with that OC Pepper Spray chemical agent known as Oleo Capsicun Resin.

53. Plaintiff was in an observation cell due to a mental breakdown and fall out with his facility as to his housing. Thomas was taken and put into an observation cell per Medical and Mental Health for an overnight observation. Thomas done nothing more than go into that cell and go to sleep. Thomas was awoken to being sprayed by Officers in this cell with that chemical agent described herein this Complaint known as OC Pepper Spray – Fox Mace.

14

54. Thomas filed his Informal Complaint Resolution Form ("ICRF"), Notification of Grievance ("NOG") and Appeal to the Chief Inspector's Office ("ACO"), in Columbus, Ohio on 8/17/2023 and it was denied on 9/27/2023. *See*: **Exhibit – B**, attached hereto and hereby incorporated herein by reference as **Exhibit – B**. (Grievance ID # 273690821 Dated 8/17/2023 – Disposed of 9/27/2023.)

55. This is a clear case of "Use of Excessive Force" in Violation of the "Eighth Amendment" to the "United States Constitution".

56. Thomas seeks the following compensation in damages as a direct result of the violations incurred and actions of the Defendant's listed herein this Complaint in § III. ¶¶ 5 – 7.

57. Defendant's actions/inactions caused Thomas to miss his family's 'Celebration of Life' which was held in connection with Plaintiff's little brother, Christopher James Thomas. DRC can NEVER replace what Thomas missed as a result of their ill-mannered illicit behavior towards Thomas out of retaliation and spite and malicious and sadistic acts which were unjustified.

58. This Court must draw the inference that Thomas' Eighth Amendment Rights secured under the United States Constitution has been clearly violated by Keith's direct conduct and actions directed specifically towards Thomas.

**WHEREFORE THOMAS SEEKS DAMAGES AGAINST DEVIN KEITH FOR:**

Thomas respectfully prays that this Honorable United States District Court for the Northern District of Ohio enter Judgment:

A. Emotional Distress in the amount of Two Hundred Fifty Thousand Dollars and Zero Cent ($250,000.00);

B. Mental Anguish in the amount of Two Hundred Fifty Thousand Dollars and Zero Cent ($250,000.00);

15

C. Compensatory Damages in the amount of One Million Dollars and Zero Cent ($1,000,000.00);

D. Punitive Damages in the amount of Five Hundred Thousand Dollars and Zero Cent ($500,000.00);

E. Pain and Suffering in the amount of One Million Dollars and Zero Cent ($1,000,000.00);

F. Constitutional Damages in the amount of Five Hundred Thousand Dollars and Zero Cent ($500,000.00);

G. Monetary Relief in the amount of Five Hundred Thousand Dollars and Zero Cent ($500,000.00);

H. Injunctive Relief is sought in this Complaint and anything contrary in this Complaint notwithstanding. Injunctive Relief sought against Defendant Devin Keith is not the only remedy which will cure the alleged violations. Additionally, anything contrary in this Complaint notwithstanding. Plaintiff seeks all and each Injunctive Relief only as permitted as appropriate and applicable by law.

I. Declaratory Relief is sought pursuant to 28 U.S.C. § 2201 and § 2202, which provides for federal courts to declare rights and legal relations that are in controversy and remedy thereof Thomas's claims.

J. Thomas also seeks Attorney Fees pursuant to 28 U.S.C. § 1915 and any other Relief that this honorable Court might or may deem just and appropriate in conjunction with this Complaint and that damages be accessed against Defendants, collectively – as to Attorney Fees – for the violations alleged that were so directed at Thomas in violation of Thomas' Right to be Free from Cruel and Unusual Punishment protected and prohibited by the United States Constitution's Eighth Amendment.

16

**WITNESSES TO THIS COMPLAINT/CLAIM AS OF RIGHT:**

Brandon Elder #783511
Allen Tillet #750862

## B. FIRST AMENDMENT CLAIM – RETALIATION CLAIM

### b. STEVEN MANDUSIC

1. Plaintiff filed multiple complaints on the institutional level against Mandusic, such as, but not limited to: sleeping on the job; using provocative language against Plaintiff; using profanity toward the Plaintiff and other inmate prisoner's, making threats against inmate prisoner's; harassing and targeting Plaintiff and other inmate prisoner's, discriminating against Plaintiff and other inmate prisoner's; and the writing of frivolous and malicious conduct report out of bad-seeded motive and evil-intent and evil-motive with the intentions of putting inmates on restrictions at the convenience of the officer writing bad tickets on the inmate. Mandusic only wrote Thomas conduct reports in a means of retaliation because Thomas wrote Mandusic up on institutional informal complaint forms alleging misconduct on Mandusic's job performance and in return Thomas was written conduct reports and sanctioned as a direct result of filing informal complaints on the institution level which is additionally considered to be 'protected conduct' as defined by the United States Supreme Court.

2. Mandusic only wrote Plaintiff conduct reports out of adverse action because Thomas was filing lots of administrative complaints and Mandusic was slightly involved in those filings and Mandusic became very upset and targeted Thomas because Thomas was filing administrative complaints within the institution against employees, including Mandusic, but not limited to Mandusic, for violating the Standard of Employees Rules of Conduct pursuant to 31-SEM-01 – 31-SEM-06, which is attached hereto and hereby incorporated herein by reference as **Exhibit _C_**. (Standard Rules of Employee Conduct – Policy 31-SEM-02.), along with Appropriate

17

Supervision Standards being in violation of Administrative Rule ("AR") § 5120-9-04(B), which are attached hereto and hereby incorporated herein by reference as **Exhibit – D**, (Administrative Regulation § 5120-9-04.).

3. Every time Plaintiff wrote an ICRF against Mandusic, starting back as early as March 17, 2023, Thomas was either shaken down by Mandusic's Partner Dean, who works with Mandusic as Mandusic's co-worker, and Dean would take the initiative to do Mandusic's job and Dean would go venture off and torment the inmate who usually would be Thomas, the litigator or jailhouse lawyer Mandusic and Dean labeled Thomas as within the institution.

4. This Court must know that the left hand always knows what the right hand is doing and is going to do before it happens, so as to say, Mandusic and Dean, collectively, acted as one in retaliating against Plaintiff because Plaintiff engaged in the filings of the ICRF process designed by the ODRC in which caused for Dean and Mandusic, to become retaliatory in nature towards the Plaintiff for filing complaints on the institutional level.

5. Every time Mandusic would become upset emotionally and mentally in the 5 Lower Housing Unit with other inmate's not listening to him in the Unit Mandusic would take out his anger on Thomas by verbally assaulting or abusing Thomas, then once an argument was created by Mandusic, Mandusic would get upset and write Thomas conduct reports or have Thomas shaken down and written up by other co-worker officers working the Unit with Mandusic at the same time and Mandusic would make comments to Thomas like "yeah, I know, write me up and I will just write you up and we will see who wins.".

6. Thomas was singled out by Mandusic, Dean, Shrader and Robinson and eventually came along Rineholdt. Thomas was singled out by Mandusic and Dean, specifically and collectively, along with Shrader and Robinson, for filing ICRF's on the institutional level against them and in

18

their Unit, in violation of Plaintiff's First Amendment Right to Petition the Government for a Redress of Grievance without enduring Retaliation/adverse action by the opposition. **Thaddeus-X v. Blatter**, 175 F.3d 378, United States Court of Appeals for the Sixth Circuit, December 10, 1997, Argued; March 8, 1999, Decided; March 8, 1999, Filed No. 95-1837.

7. It is clearly established law that if an ordinary person with ordinary firmness would not continue to engage in the same course of protected conduct as the Plaintiff did as to further filings of redressing grievances on the DRC/State level leading into retaliation that anyone else ordinarily would cease their filings also and draw inference from this Court instead of resulting in further retaliatory conduct from the Defendant(s) and further consequences set out by the DRC/State of Ohio for the Plaintiff engaging in legitimate protected conduct.

8. Plaintiff was obviously engaged in conduct clearly protected by the United States Constitution's First Amendment Right as so defined by our United States Supreme Court, Defendant Mandusic took adverse action against Thomas and this adverse action was only taken against Thomas because Thomas engaged in the filings of ICRF's on the institutional level within his right secured under the United States Constitution's First Amendment Right to Petition the Government for a Redress of Grievance.

9. This Court must find that all Three (3) elements of Thomas' First Amendment rights to the United States Constitution which has been clearly violated by these said named Defendants listed in (§ III. ¶¶ 5 – 14), *supra*.

10. Mandusic made obscene gestures towards Plaintiff as to belittle him and his character in the dayrooms as a means of harassment and humiliation and Mandusic would only commit these heinous acts while other inmate were around in which Mandusic would say things like "Yeah, that's exactly right, that's why you're never going to go home because you don't listen to me"

and "Yeah, I know, I bet your mother is really proud of you" and other disturbing comments a DRC official would make to an inmate to just cause irritation and provocation.

11. Mandusic has written Thomas conduct reports in return for Thomas writing Mandusic up on the ICRF's provided by the DRC facility known as RICI. Mandusic has stated he is tired of being called to the administration building to deal with these write ups from inmates like Thomas because Mandusic has to explain to the shift commanders his conduct and why he is being written up for by the inmates complaining of his conduct and in return for that Mandusic would write Thomas conduct reports knowing that Sergeant Shrader would automatically find Thomas guilty and side with Mandusic and that Shrader would automatically sanction Thomas as to punishments like commissary restrictions, phone restrictions, GTL restrictions, visitation restrictions, I-care restrictions and more.

12. This back-n-forth conduct between the Plaintiff and Mandusic lasted nearly Two (2) – Three (3) months before Unit Manger Robinson intervened and put Thomas under investigation for Six (6) days as a direct result of Thomas filing ICRF's against Mandusic in her 5 Lower Housing Unit.

**WHEREFORE THOMAS SEEKS DAMAGES AGAINST STEVEN MANDUSIC FOR:**

Thomas respectfully prays that this Honorable United States District Court for the Northern District of Ohio enter Judgment:

A. Emotional Distress in the amount of One Hundred Thousand Dollars and Zero Cent ($100,000.00);

B. Mental Anguish in the amount of One Hundred Thousand Dollars and Zero Cent ($100,000.00);

20

C. Compensatory Damages in the amount of One Hundred Thousand Dollars and Zero Cent ($100,000.00);

D. Punitive Damages in the amount of Fifty Thousand Dollars and Zero Cent ($50,000.00);

E. Pain and Suffering in the amount of One Hundred Thousand Dollars and Zero Cent ($100,000.00);

F. Constitutional Damages in the amount of One Hundred Thousand Dollars and Zero Cent ($100,000.00);

G. Monetary Relief in the amount of Two Hundred Thousand Dollars and Zero Cent ($200,000.00);

H. Injunctive Relief is sought in this Complaint and anything contrary in this Complaint notwithstanding. Injunctive Relief sought against Defendant Steven Mandusic is not the only remedy which will cure the alleged violations. Additionally, anything contrary in this Complaint notwithstanding. Plaintiff seeks all and each Injunctive Relief only as permitted as appropriate and applicable by law.

I. Declaratory Relief is sought pursuant to 28 U.S.C. § 2201 and § 2202, which provides for federal courts to declare rights and legal relations that are in controversy and remedy thereof Thomas's claims.

J. Thomas also seeks Attorney Fees pursuant to 28 U.S.C. § 1915 and any other Relief that this honorable Court might or may deem just and appropriate in conjunction with this Complaint and that damages be accessed against Defendants, collectively – as to Attorney Fees – for the violations alleged that were so directed at Thomas in violation of Thomas' Right to be Free from Retaliation protected and prohibited by the United States Constitution's First Amendment.

21

**WITNESSES TO THIS COMPLAINT/CLAIM AS OF RIGHT:**

Kevin Grant #784144

## C. FIRST AMENDMENT CLAIM – RETALIATION CLAIM

### c. DEBRA SHARDER

1. On 4/27/2023 at between the times of 9:00am – 10:00am Thomas was sitting at his bunk drinking coffee watching TV with his cell mate and neighboring cellmates enjoying his day.

2. Shrader approached Thomas spitefully this morning holding in her hands a set of handcuffs yelling abruptly at Thomas that he done it now and that he [Thomas] feared for his safety and life and therefore ordered for him [Thomas] to "Stand up, turn around and cuff up.".

3. Thomas asked Shrader "What are you talking about?". "I don't fear for my safety or my life."

4. Shrader then returned statement to Thomas saying "Yeah, you sent a kite saying that you feared for your life! Now turn around and cuff up!"

5. Thomas at first refused to cuff up and demanded to know what Shrader was talking about.

6. Shrader replied to Thomas saying "Yeah, you did it now, whatever you did, you're going to the hole this time!" "Now cuff up!".

7. Thomas then became angry and cuffed up and was escorted to the Segregation Unit.

8. Thomas and Shrader exchanged a few words during the escort out of the 5 Lower Housing Unit and Thomas was ultimately taken to the Segregation Unit per Shrader.

9. Thomas was put into a change-out cage/holding cell once he arrived at the Segregation Unit in RiCI and Thomas refused to uncuff in the cell until a supervisor was called and had come to speak to Thomas.

10. The Segregation Unit's Lieutenant Mr. Sipes came to speak to Thomas briefly.

11. Thomas was provided with a 'confidential statement form' and told to "Fill this out, you already know what you will have to say, "You don't fear for your life, safety blah blah blah…"" in which Thomas agreed and complied and completed the form stating within it that he did not fear for his life, his safety or any guard staff member or anyone within the institution itself.

12. Thomas was then informed by the Segregation staff that it was not because Thomas feared for his safety or life or anything like that, it was because Thomas was actually being put under investigation for filing ICRF's against Mandusic in the 5 Lower Housing Unit per Unit Manager ("UM") Robinson.

13. Thomas stayed in the Segregation Unit from 4/27/2023 – 5/2/2023 as a direct result of Robinson and Shrader's conduct.

14. Shrader read every single conduct report that Plaintiff was issued while in the Segregation Unit although Shrader was not the Plaintiff's housing unit sergeant at the time and should never have held the hearings for the Plaintiff on those conduct reports, which there were somewhere around Eight (8) – Ten (10) conduct reports written against the Plaintiff at this time and Shrader found the Plaintiff guilty of every single conduct report regardless of whether evidence supported the allegations or not. Plaintiff's housing sergeant at the time of the hearings would have been Sergeant Jones from the 5 Upper Housing Unit as the Plaintiff was at that time assigned to the 5 Upper Housing Unit while in the Segregation Unit. More retaliatory conduct.

15. When Thomas returned from the Segregation Unit on 5/2/2023 which yielded no conduct report against Thomas and Thomas was now placed into the 4 Lower Housing Unit.

16. Thomas attempted to gather the remaining portions of his property that was still scattered in the institution which was still in the 5 Lower Housing Unit where Thomas resided before he was forcefully escorted out of that Unit and taken to the Segregation Unit by Shrader.

17. Thomas learned that Shrader had confiscated his Clear Tunes TV during the pack-up process she commenced and spitefully knowing that the TV belonged to Thomas forced Thomas to provide her a Title of Ownership and the Receipts for the TV and Shrader was still refusing to overturn the TV back to Thomas once she possessed his property.

18. Thomas complied and returned with the requested documentation for the TV and handed them to Shrader and Shrader stated to Thomas to never speak to her again because Thomas supposedly wrote falsified complaints against Shrader.

19. Shrader gave Thomas his TV and Thomas went back to the 4 Lower Housing Unit.

20. Shrader further stated to Thomas that Shrader had been trying to remove Thomas from her Unit for the past Six (6) months or so and that nobody wanted Thomas and Shrader then asked Thomas to his face in her office "Why does no one want you for?".

21. Thomas responded by stating he did not know what Shrader was talking about.

22. After the drafting of this lawsuit/Complaint Thomas learned that what Shrader was talking about was that no other Unit wanted to accept Thomas because Thomas is labeled as a "High Filer Litigator/Jailhouse Lawyer" and no other Housing Units want to deal with the ICRF process with respect to the conditions of confinement and professionalism of conduct of Officers within the institution itself in which Thomas produces legitimate complaints that deals with the corruption of state actors and officials, and therefore, Thomas stays at a disadvantage.

23. Thomas done nothing more than utilize the complaint process to address certain housing problems and concerns with certain officers and unit management as they act negligent and bias toward the inmate population constantly, and nothing is ever done about it except for the inmates, such as, but not limited to; Thomas, become labeled and targeted and singled out and excessively written institutional conduct reports that are always favorable for the staff as there

24

is no proper or real due procedural process set forth in the RiCI to prevent a manifest weight of injustice as to these illicit writings of frivolous conduct reports heard by the institutional sergeants who are the 'buddies' of the corrections 'officers' in a means of mere harassment and a campaign of harassment by the officers working for DRC at RiCI.

24. This Court must draw the inference that Thomas' First Amendment Rights secured under the United States Constitution has been clearly violated by Debra Shrader's direct conduct and actions directed specifically towards Thomas for engaging in protected conduct.

**WHEREFORE THOMAS SEEKS DAMAGES AGAINST DEBRA SHRADER FOR:**

Thomas respectfully prays that this Honorable United States District Court for the Northern District of Ohio enter Judgment:

A. Emotional Distress in the amount of One Hundred Thousand Dollars and Zero Cent ($100,000.00);

B. Mental Anguish in the amount of One Hundred Thousand Dollars and Zero Cent ($100,000.00);

C. Compensatory Damages in the amount of One Hundred Thousand Dollars and Zero Cent ($100,000.00);

D. Punitive Damages in the amount of Fifty Thousand Dollars and Zero Cent ($50,000.00);

E. Pain and Suffering in the amount of One Hundred Thousand Dollars and Zero Cent ($100,000.00);

F. Constitutional Damages in the amount of One Hundred Thousand Dollars and Zero Cent ($100,000.00);

G. Monetary Relief in the amount of Two Hundred Thousand Dollars and Zero Cent ($200,000.00);

H. Injunctive Relief is sought in this Complaint and anything contrary in this Complaint notwithstanding. Injunctive Relief sought against Defendant Debra Shrader is not the only remedy which will cure the alleged violations. Additionally, anything contrary in this Complaint notwithstanding. Plaintiff seeks all and each Injunctive Relief only as permitted as appropriate and applicable by law.

I. Declaratory Relief is sought pursuant to 28 U.S.C. § 2201 and § 2202, which provides for federal courts to declare rights and legal relations that are in controversy and remedy thereof Thomas's claims.

J. Thomas also seeks Attorney Fees pursuant to 28 U.S.C. § 1915 and any other Relief that this honorable Court might or may deem just and appropriate in conjunction with this Complaint and that damages be accessed against Defendants, collectively – as to Attorney Fees – for the violations alleged that were so directed at Thomas in violation of Thomas' Right to be Free from Retaliation protected and prohibited by the United States Constitution's First Amendment.

## WITNESSES TO THIS COMPLAINT/CLAIM AS OF RIGHT

Kevin Grant #784144

### D. FIRST AMENDMENT CLAIM – RETALIATION CLAIM

#### d. APRIL ROBINSON

1. After sitting Two (2) or Three (3) hours in the Segregation Unit's change-out cage/cell Thomas demanded to speak to Mental Health ("MH") because Robinson had just put Thomas under investigation for filing ICRF's against 'her' officer, Mandusic.

2. Mr. Michaels, the MH liaison for Thomas had come to the Segregation Unit immediately to speak to Thomas.

26

3. Thomas was escorted to a closed room in the Segregation Unit with MH for a confidential meeting with Thomas' liaison Mr. Michaels.

4. Within One (1) to Two (2) minutes of Thomas speaking with Mr. Michaels Robinson barged into the room and Robinson jokingly referred to Thomas as 'her project' to Mr. Michaels and stated that she [Robinson] had been working on Thomas for the past year or so and that Robinson segregated Thomas to deter Thomas from further filing any more ICRF's against Mandusic or any other officer's working the 5 Lower Housing Unit and that Thomas needed to be removed from her unit as a result of filing ICRF's against 'her' officers in that Unit.

5. Robinson stated to Mr. Michaels that Thomas can never come back to the 5 Lower Housing Unit once he was released from the Segregation Unit.

6. Thomas spent a total of Six (6) days in the Segregation Unit as a direct result of this allegation.

7. Thomas was put into a cell with a higher level inmate who was much more dangerous than Thomas was and this inmate was classed already to a level Three (3) institution for assaulting another inmate prisoner along with Four (4) other affiliates of his.

8. Thomas was and is a level Two (2) inmate and the other inmate whose identity is not and will not be revealed right now within this Complaint will be presented prior to trial as he was a level Three (3) inmate classed to a maximum security institution and was housed with Thomas, a level Two (2) inmate, classed at a minimum level security institution. One may ask themselves, why put a level Two (2) inmate in with a level (3) inmate whose security has just been increased from a Two (2) to a Three (3) because of his violence. Thankfully the Plaintiff made it out alive!!!

9. As a result of being put into this cell under these conditions Thomas began punching the wall and door out of anger and depression causing substantial damage to himself and his hand all

27

due to the actions of Robinson and Shrader, collectively, putting Thomas under investigation for filing ICRF's against their staff/officers in the 5 Lower Housing Unit.

10. Thomas suffered physical damage and pain and suffering to his right hand and mental anguish and emotional distress as a direct result and indirect result of Mandusic, Shrader and Robinson's actions and/or inactions towards Thomas.

11. Robinson violated Thomas' First Amendment Right to the United States Constitution by segregating Thomas for simply filing meritorious ICRF's against Officers in the 5 Lower Housing Unit out of mere retaliation.

12. It is clearly established law that if an ordinary person with ordinary firmness would not continue to engage in the same course of protected conduct as the Plaintiff did as to further filings of redressing grievances on the DRC/State level leading to retaliation that anyone would cease their filings and draw the inference from this Court instead of resulting in further retaliatory conduct and consequences set out by the DRC/State of Ohio Staff and Officers/Officials for engaging in protected conduct.

13. Plaintiff was engaged in conduct protected by the United States Constitution as defined by the United States Supreme Court. Robinson had taken advantage of Thomas and had taken adverse action against Thomas and this adverse action was at least motivated, if not motivated in full, was at least motivated in part because of Thomas filing ICRF's against 'her' [Robinson's] staff [Mandusic and Shrader] and because the protected conduct alleged against Robinson's Officer's listed above in (§ III. ¶¶ 8 and 9).

14. Hence, had Thomas not engaged in the filings of his administrative remedies process of the Informal Complaint Resolution Form process then the Retaliation/Conduct would never have happened against Thomas as Thomas was put under an investigation in administrative

**28**

segregation for a total of Six (6) days without a conduct report or rule violation/infraction just because Thomas filed Informal Complaint Resolution Forms in the 5 Lower Housing Unit against certain named Defendants in this Complaint.

15. This Court must draw the inference that Thomas' First Amendment Rights secured under the United States Constitution has been clearly violated by April Robinson's direct conduct and actions directed specifically towards Thomas for engaging in protected conduct.

**WHEREFORE THOMAS SEEKS DAMAGES AGAINST APRIL ROBINSON FOR:**

Thomas respectfully prays that this Honorable United States District Court for the Northern District of Ohio enter Judgment:

A. Emotional Distress in the amount of One Hundred Thousand Dollars and Zero Cent ($100,000.00);

B. Mental Anguish in the amount of One Hundred Thousand Dollars and Zero Cent ($100,000.00);

C. Compensatory Damages in the amount of One Hundred Thousand Dollars and Zero Cent ($100,000.00);

D. Punitive Damages in the amount of Fifty Thousand Dollars and Zero Cent ($50,000.00);

E. Pain and Suffering in the amount of One Hundred Thousand Dollars and Zero Cent ($100,000.00);

F. Constitutional Damages in the amount of One Hundred Thousand Dollars and Zero Cent ($100,000.00);

G. Monetary Relief in the amount of Two Hundred Thousand Dollars and Zero Cent ($200,000.00);

H. Injunctive Relief is sought in this Complaint and anything contrary in this Complaint notwithstanding. Injunctive Relief sought against Defendant April Robinson is not the only remedy which will cure the alleged violations. Additionally, anything contrary in this Complaint notwithstanding. Plaintiff seeks all and each Injunctive Relief only as permitted as appropriate and applicable by law.

I. Declaratory Relief is sought pursuant to 28 U.S.C. § 2201 and § 2202, which provides for federal courts to declare rights and legal relations that are in controversy and remedy thereof Thomas's claims.

J. Thomas also seeks Attorney Fees pursuant to 28 U.S.C. § 1915 and any other Relief that this honorable Court might or may deem just and appropriate in conjunction with this Complaint and that damages be accessed against Defendants, collectively – as to Attorney Fees – for the violations alleged that were so directed at Thomas in violation of Thomas' Right to be Free from Retaliation protected and prohibited by the United States Constitution's First Amendment.

**WITNESSES TO THIS COMPLAINT/CLAIM AS OF RIGHT:**

MH Dr. Michaels
Kevin Grant #784144

### E. FIRST AMENDMENT CLAIM – RETALIATION CLAIM

#### e. RINEHOLDT

1. On June 27, 2023 at approximately 1:00pm – 2:00pm Secretary for the 5 Lower Housing Unit, known as Ms. Rineholdt had noticed the Plaintiff's standing outside of the 5 Lower Housing Unit waiting on another inmate when Rineholdt began yelling at the Plaintiff for him to "come here" in which Thomas refused to listen to her and did not come to her when called.

30

2. Rineholdt then had Two (2) inmate's unknown to the Plaintiff carry out of the 5 Lower Housing Unit the Plaintiff's 2.4 legal box containing all of his previously filed legal documents, such as, but not limited to; collateral attacks on Plaintiff's criminal case, pending and pre-existing lawsuits filed against DRC themselves, Writs and Property Claims against DRC, etc.

3. Rineholdt had Plaintiff's legal property secured in her vault in her office as Thomas had just previously resided in that Unit before being pried out and thrown into the Segregation Unit for filing ICRF's against the 5 Lower Housing Unit staff. All inmate legal property stays in the Secretary vaults for safe keeping unless the inmate decides they want it out to work on it.

4. Thomas never requested his legal box and never asked for it to be brought out of that 5 Lower Housing Unit. Rineholdt had made the sole decision to have Two (2) unknown inmates physically carry out of the 5 Lower Housing Unit Thomas' legal box and threw it outside on the ground in the parking lot area with hundreds of inmates walking back-n-forth asking the Plaintiff "what is she doing?", meaning what is the secretary doing throwing Thomas' legal property out like that. Everyone was stunned at her behavior.

5. Thomas was forced to abandon his legal property though highly sensitive in nature and highly confidential. This material sat outside at the exposure of other inmates putting Plaintiff in danger with that information sitting outside of the 5 Lower Housing Unit abandoned and left alone by itself for anyone to take.

6. Ms. Robinson then noticed what had just occurred in her Unit and ran outside and grabbed Thomas' legal box and put it into her office for safe keeping until Thomas could come properly pick it up.

7. Rineholdt had Two (2) unknown inmates carry Plaintiff's 2.4 legal box outside from the 5 Lower 5 Housing Unit and had the inmates throw the Plaintiff's 2.4 legal box (unsecured) out

into the middle of the asphalt parking lot area of the 5 Lower Housing Unit and Rineholdt was screaming at the Plaintiff from inside the 5 Lower Housing Unit "Yeah Motherfucker, bet you get your legal shit out of my office now you dumb ass fuck" and Rineholdt stormed back into the 5 Lower Housing Unit.

8. The Plaintiff, with his hernia, had to physically lift that 2.4 legal box which weighed probably somewhere close to One Hundred (100) pounds and the Plaintiff has been instructed by Medical to not lift over Ten (10) pounds.

9. Because of Rineholdt, Plaintiff had to risk injuring himself and endured embarrassment and humiliation as she yelled and screamed at the Plaintiff and discarded and abandoned Plaintiff's property while yelling at him and disrespecting him calling him names that were derogatory in nature and unprofessional to the DRC Standard Employee Rules of Conduct.

10. This treatment was only sought out against the Plaintiff by Rineholdt because of the previous altercations that occurred with the Plaintiff being segregated for filing ICRF's in that Unit. Rineholdt retaliated against the Plaintiff because the Plaintiff engaged in protected conduct and filed further complaints after coming out of the Segregation Unit for the dates of 4/27/2023 – 5/2/2023, the dates the Plaintiff was segregated for filing administrative complaints against certain state actors.

11. Plaintiff has attached hereto and hereby incorporates herein by reference as **Exhibit – E**, a 'hand written' ICRF in connection with the conduct of Defendant Rineholdt and the Complaint that was generated by Thomas against Rineholdt for this Claim. *See*: **Exhibit – E** (ICRF Dated 6/29/2023, Sent to Investigator – No Resolution thereto)

12. This Court must draw the inference that Thomas' First Amendment Rights secured under the United States Constitution has been clearly violated by Rineholdt's direct conduct and actions directed specifically towards Thomas for engaging in protected conduct.

**WHEREFORE THOMAS SEEKS DAMAGES AGAINST RINEHOLDT FOR:**

Thomas respectfully prays that this Honorable United States District Court for the Northern District of Ohio enter Judgment:

A. Emotional Distress in the amount of One Hundred Thousand Dollars and Zero Cent ($100,000.00);

B. Mental Anguish in the amount of One Hundred Thousand Dollars and Zero Cent ($100,000.00);

C. Compensatory Damages in the amount of One Hundred Thousand Dollars and Zero Cent ($100,000.00);

D. Punitive Damages in the amount of Fifty Thousand Dollars and Zero Cent ($50,000.00);

E. Pain and Suffering in the amount of One Hundred Thousand Dollars and Zero Cent ($100,000.00);

F. Constitutional Damages in the amount of One Hundred Thousand Dollars and Zero Cent ($100,000.00);

G. Monetary Relief in the amount of Two Hundred Thousand Dollars and Zero Cent ($200,000.00);

H. Injunctive Relief is sought in this Complaint and anything contrary in this Complaint notwithstanding. Injunctive Relief sought against Defendant Rineholdt is not the only remedy which will cure the alleged violations. Additionally, anything contrary in this

33

Complaint notwithstanding. Plaintiff seeks all and each Injunctive Relief only as permitted as appropriate and applicable by law.

**I.** Declaratory Relief is sought pursuant to 28 U.S.C. § 2201 and § 2202, which provides for federal courts to declare rights and legal relations that are in controversy and remedy thereof Thomas's claims.

**J.** Thomas also seeks Attorney Fees pursuant to 28 U.S.C. § 1915 and any other Relief that this honorable Court might or may deem just and appropriate in conjunction with this Complaint and that damages be accessed against Defendants, collectively – as to Attorney Fees – for the violations alleged that were so directed at Thomas in violation of Thomas' Right to be Free from Retaliation protected and prohibited by the United States Constitution's First Amendment.

## WITNESSES TO THIS COMPLAINT/CLAIM AS OF RIGHT

April Robinson

 **F.** <u>**FIRST AMENDMENT CLAIM – RETALIATION CLAIM & DUE PROCESS**</u>

 **G.** <u>**FIRST AMENDMENT CLAIM – RETALIATION CLAIM & DUE PROCESS**</u>

  **f.** <u>**DOUGLAS G. SMITH**</u>

  **g.** <u>**M. JOHNSTON**</u>

**1.** Plaintiff had been attempting to litigate his claims against certain ODRC officials, such as, but not limited to: Robinson, Mandusic, Rinehold, Shrader, Smith and Johnston, T. Adkins, J. Hickman, R. Hayes, Sipes, and Keith, addressing institutional complaints that occurred prior "to and after" being thrown out of the 5 Lower Housing Unit for filing ICRF's against Officers, all starting somewhere around the dates of 5/2/2023 through 1/27/2024 due to the 5 Lower Housing Unit altercation with the Plaintiff and the involuntary segregation Plaintiff endured

while Robinson was investigating Plaintiff for nothing more than filing ICRF's on the institutional level, and, specifically, but not limited to: ODRC Officers; T. Adkins, Dennison, J. Hickman, R. Hayes, Robinson, Shrader, Mandusic, and Rineholdt, all for retaliatory allegations for Plaintiff engaging in protected conduct protected by the U.S. Constitution's First Amendment, such as, but not limited to: ICRF's, NOG's, and ACO, all on the institutional level dealing with state operated prison policies, AR's and other operational systems and conditions of confinement.

2. On or around 7/6/2023 Plaintiff was called to Smith's office to pick up pending copies he had there.

3. Smith began telling the Plaintiff that Smith just wrote the Plaintiff Two (2) – Three (3) conduct reports for "assisting other inmates with their legal work". *See*: attached Conduct Report, attached hereto and hereby incorporated herein by reference as **Exhibit – F**. (Conduct Report Dated 7/1/2023, which was thrown out/withdrawn on the sergeant level at disposition during the hearings).

4. Plaintiff stated to Smith that he can assist other inmates with the preparation of their legal pleadings without interference from institutional staff members as long as they do not pay him. *See*: attached ICRF, attached hereto and hereby incorporated herein by reference as **Exhibit – G**. (ICRF Dated 7/10/2023 Sent to Deputy Warden Special Services – Deputy Warden Allen)

5. Smith then stated back to the Plaintiff "Oh well, we'll be watching 'you' extra close and be paying more attention to you and will suspend you again if you continue to engage in this behavior.

6. Smith stated to the Plaintiff that "we have posters posted and flyers hanging in our library that tell you the rules" in which Smith was referencing to a "Memo" that was posted and released

35

from the Columbus headquarters who protects the RICI for the ODRC and was hung up in the

law library for the General Population of the prisoners at the RICI which states in pertinent

part:

"To:    Incarcerated Persons

From:  Stacy Wicks, Library Administrator I, OCSS

Re:    Law Library Use

Date: 2/8/2024

Hello everyone,

OCSS would like to remind all offenders that the computers in the Law Libraries are to be used for legal work only. **This legal work must be pertaining to any current and open cases.**

Library staff reserve the right to ask for proof of any open cases and deadlines. **Library staff also reserve the right to deny printing if they find anything not related to a legal case.** Please keep in mind that using the law library computers is a privilege, as all courts in Ohio do accept handwritten motions and forms. This privilege can be removed if time spent in the Law Library is abused; this time could be used by someone who does have an open case and a deadline.

Thank you for your cooperation,
Stacy Wicks

Library Admin 1, OCSS"

*See*: attached Letter Head, attached hereto and hereby incorporated herein by reference as **Exhibit – H**. (Memo to Incarcerated Persons Dated 2/8/2024, From Stacy Wicks, Librarian Administrator 1, OCSS)

7.  Because of this Memo, our Facility, RICI, and Defendants Smith and Johnston have become confused as to the fundamental rights of a litigant and the Constitutional protections of One's right to litigate without interference from clothed state actors frustrating the legal process on

the litigant and burdening them to create a deficiency in their filings or causing the prisoner an abandonment of the pleadings in totality.

8. Plaintiff Thomas did not abandon his claims or rights and was attacked as a result of that conduct by Defendants Johnston and Smith, collectively.

9. Pursuant to 59-LEG-01(VI)(F) the Plaintiff is protected and is permitted to help and assist other inmates on 'legal' actions and pleadings (without payment) without staff interference burdening the process or heightening the bar making the hurdle harder on the prisoner than it already is.

10. Smith states that "No, you are not allowed and I will continue to suspend you and write you conduct reports if you continue to engage in this behavior."

11. Smith and ODRC Officer Smith, who works security for the Education Building in RICI, have blown up the Plaintiff's inmate picture and hung it up for everyone to view in the library area without express permission from the Supervising Manager who would have been the Deputy Warden Ms. Allen, pursuant to Policy 31-SEM-02(VI), p.14, (Disciplinary Grid – Performance Track, which explicitly states "[t]he posting or removal of any matter on a bulletin board without authorization" is a violation of Rule 35 of the Standard Rules of Employee Conduct), and has now posted it up on a visible window for the inmate and staff population to see and view as a joke. Not funny to the Plaintiff.

12. Since the hanging of Plaintiff's picture in that window, the Plaintiff has been approached by staff and inmates inquiring as to "what did you do to get kicked out of the library?", "were you jacking on them ladies down there?" and other extremely derogatory comments Plaintiff had to deal with in the institution such as to questioning what did the Plaintiff do?

37

13. Plaintiff's character and view of him and his reputation has changed dramatically and traumatically as a result of the hanging the picture up in that window for a Fourteen (14) day grace period.

14. Inmates and staff made derogatory jokes and insults at the Plaintiff as a direct result of the staff hanging Plaintiff's picture up on that window illicitly and unprofoundly and without express approval from their supervisor. This put Plaintiff at risk with his peers and staff members.

15. Due to Plaintiff enduring severe retaliation from his staff members from the dates of 3/1/2023 through 5/2/2023 for the time while the Plaintiff resided in the 5 Lower Housing Unit, and from 5/2/2023 – 1/17/2024 for the time while the Plaintiff resided in the 4 Lower Housing Unit, and it is still happening as this Complaint is being authored and drafted by the Plaintiff right now, that Plaintiff attempted to draft nearly Ten (10) + institutional complaints to address these retaliatory concerns with the proper supervisors and was denied access to the grievance platform.

16. Plaintiff had no other means of addressing his institutional complaints pursuant to AR § 5120-9-31 as to the retaliation he was enduring with his staff.

17. The more Plaintiff filed, the worse it got for the Plaintiff with the staff attacking the Plaintiff.

18. Somewhere around 8/1/2023 Plaintiff was attempting to address more claims of retaliation against certain staff members, specifically ODRC officials from the 5 Lower Housing Unit and the 4 Lower Housing Unit, all of which have been named in this instant Complaint listed in (§ III. ¶¶ 5 – 14), not including newly named Defendants that will be sued later due to their illicit actions which were taken against the Plaintiff and has happened further through the months and over the past year since these events have taken place.

19. Plaintiff had over Twenty (20) files saved on the institutional LEXIS NEXIS/Word Processor computers designed for the inmate population to use to draft their legal pleadings, in which after the Plaintiff drafted his Complaints on the institutional level and for the Federal Court and went to have them printed, Johnston noticed what the Plaintiff was actually filing as to his administrative complaints on the Word Processor, Johnston and Smith deleted all but Two (2) of the Plaintiff's legal filings. These Complaints were addressed to the Shift Supervisors about the conditions of confinement and the Retaliation from the 4 Lower Housing Unit and the 5 Lower Housing Unit. All of which Johnston and Smith collectively deleted in an attempt to stop the Plaintiff from complaining and filing this lawsuit.

20. Smith oversees the library facility and the operations of it are under his control.

21. Smith suspended the Plaintiff on 7/1/2023 for Fourteen (14) days for helping other inmates with their legal work.

22. On 8/8/2023 Plaintiff was written a conduct report for **1.)** a Rule Violation 5.2: Disobedience to a Direct Order; and **2.)** a Rule Violation: 7.2: Forging, possessing, or presenting forged or counterfeit documents, as the Plaintiff was attempting to file grievances and complaints formally through the ODRC Word Processor computer system which is designed for the inmates to prepare their legal pleadings on. *See*: attached Conduct Report, attached hereto and hereby incorporated herein by reference as **Exhibit – I**. (Conduct Report Dated 8/8/2023 at 9:30am, Reference # RICI-23-006660)

23. Plaintiff wrote his ICRF's in the law library on the Word Processor in the RICI on 8/7/2023 because the RICI refused to provide the Plaintiff with paper forms (ICRF's) and the Plaintiff had no Global Tel Link ("GTL") tablet to use to file complaints on as the Unit Plaintiff resided

in (4 Lower Housing Unit) did not have one for the inmate population at the time Plaintiff needed to file his ICRF's on the institutional level.

24. Plaintiff went to the library and used the Word Processor to make his ICRF's for the appropriate staff/supervisor to be able to be put on notice and investigate the misconduct of the staff involved in the ICRF's from the Plaintiff.

25. On 8/7/2023 Johnston spoke with the Plaintiff and advised the Plaintiff to "stop" re-creating documents.

26. Plaintiff explained "I am not recreating documents, I am simply addressing my ICRF's with the appropriate supervisors because I don't have a tablet."

27. Thomas was then written a conduct report on 8/8/2023 for addressing his ICRF's by Smith for Rule Violations 5.2 and 7.2., as explained in ¶ 18, *supra.*

28. Smith only began to attack the Plaintiff as to his legal and administrative filings when Smith learned that Thomas was actually preparing this federal lawsuit against the RICI staff members collectively and, therefore Smith suspended Thomas for Fourteen (14) days from the law library services for creating/forging ICRF's for the administrative supervisors to investigate the claims of Thomas made out against certain Officials from the 5 Lower Housing Unit and the 4 Lower Housing Unit after Thomas was removed from the 5 Lower Housing Unit and moved into the 4 Lower Housing Unit with Officers J. Hickman, T. Adkins and yard Officer Dennison, who collectively sought out the Plaintiff and attacked him for nearly One (1) year writing him falsified conduct reports out of retaliation for filing ICRF's administratively against them in an attempt to get the Plaintiff rode out to another institution and have the Plaintiff's security increased from a level Two (2) 'low risk' offender to a level Three (3) 'maximum security' prison for 'higher level' offenders with 'higher risk levels'.

**40**

29. Defendants, J. Hickman, T. Adkins and Dennison, did accomplish to get the Plaintiff taken into the Segregation Unit and because of the amount of conduct reports that were collectively filed against the Plaintiff (which were more than Twenty (20) conduct reports), and Plaintiff's conduct reports were then reviewed and a Security Level increase was recommended and initiated against the Plaintiff as a result of these excessive conduct reports held by the R.I.B. 'Kangaroo Court' that RICI holds in place for inmate disciplinary hearings which is a joke and based on pure 'word of mouth' and no 'evidence' whatsoever which Security Review had taken place on 8/29/2023 recommending to place Thomas in a Level Three (3) Institution. *See*: attached Notice of Appeal – Classification Action, attached hereto and hereby incorporated herein by reference as **Exhibit – J**. (Notice of Appeal – Classification Action, Dated 8/29/2023, Security Review Appeal)

30. Plaintiff appealed that Security Review placing him at a Level Three (3) Prison and Plaintiff won that appeal. Plaintiff still resides at RICI as of now as a result.

31. Johnston, the librarian, at RICI participated directly in this event as she herself read the Plaintiff's legal filings, stated he could not have them as he was forging documentations on the computers, deleted the Plaintiff's legal pleadings herself, without Plaintiff's approval or consent or a court's approval, and had Smith himself suspend the Plaintiff for the Fourteen (14) day grace period affecting the Plaintiff's litigation efforts that he had been preparing against the RICI staff members for conspiring to ride the Plaintiff out to another prison and have his security increased from a level Two (2) to a level Three (3), which is a status increase, all for filing ICRF's administratively.

32. Johnston actually called the Plaintiff's Housing Unit (4 Lower Housing Unit) and had the Officers (Officer Kent ) working the 4 Lower Housing Unit search the Plaintiff's bunk/rack

41

area to find stolen "book materials" that were allegedly "missing" as a result of the Plaintiff filing ICRF's administratively against Johnston, Smith and other Officials in RICI that Johnston personally knows, and in which the Plaintiff has NEVER taken books, magazines or any other readable referenced materials from or out of the library because the Plaintiff only goes to the library to use the LEXIS NEXIS computers for legal research and litigation efforts and uses the Word Processor to type his pleadings out for the courts, Nothing more, nothing less. Plaintiff does not read books and/or magazines.

33. Johnston became mad and agitated when the Plaintiff asked Johnston as to why did Johnston send them Officers (Kent) to tear apart and disassemble his bunk area. Johnston became mad and agitated and wrote the Plaintiff yet another conduct report for engaging in that conversation stating "On the above date and time inmate Thomas #561064 came to my office door demanding to know which librarian called his dorm and had an officer shake him down for stolen law library materials. I told him he did not have the right to question me about that. He became very agitated and argumentative and told me he did have the right to know. I told him to leave and he did not, he continued to argue. I again told him to leave and he did not. I had to tell him 3 more times before he actually left." *See:* Conduct Report, attached hereto and hereby incorporated herein by reference as **Exhibit – K**. (Conduct Report – Dated 1/27/2024 at 1:05pm, Reference # RICI-24-000807).

34. Johnston knows this because she personally deals with the inmates herself who take reading materials to and from the library in which the Plaintiff has NEVER done before in the past Ten (10) years he has resided at the RICI and Johnston knows that.

35. Johnston and Smith collectively conspired against the Plaintiff to suspend the Plaintiff from litigating against them and other ODRC Officials named in this Complaint in an effort to stop

42

Thomas from filing this actual lawsuit now pending before this Court – they (Johnston and Smith) failed to stop or prevent this Plaintiff from screaming wolf and filing this Complaint no matter what they did to the Plaintiff. The Plaintiff, Thomas, just keeps going like the 'Energizer Bunny'. The Defendants second bite at the appeal was unsuccessful. Thomas made his Federal Complaint on time.

36. On 1/27/2024 at 1:05pm Thomas entered the library and asked the librarian Johnston "Why did you call my Unit Officers and tell them I stole books or legal materials from your library?".

37. Johnston wrote the Plaintiff a conduct report which is attached hereto and is hereby incorporated herein by reference as **Exhibit – K** (Conduct Report Dated 1/27/2024 at 1:05pm in the Location of the Library) just for asking a question which was "who sent the Officers at the Plaintiff" knowing he had nothing at his rack/bunk area and just for this altercation with the librarian, Thomas was written a Rule Violation 5.2: "Disobedience to a Direct Order" and Thomas was found guilty and was therefore sanctioned.

38. Thomas came back to the law library later that afternoon around 1:20pm on the same date which was 1/27/2024 to pick up his legal papers for legal filings with the State Courts and Federal Courts in preparing some legal pleadings and just because the Plaintiff assisted another inmate with assistance, free of charge, no fee whatsoever, Plaintiff was written another conduct report. (*See*: **Exhibit – M**, Conduct Report Dated 1/27/2024 at 1:20pm in the Location of the Library which is attached hereto and hereby incorporated herein by reference as **Exhibit – M**).

39. Johnston stated to Thomas that he would be suspended for Fourteen (14) days if he continued to engage in this pattern of conduct with filing legal pleadings without her approval

40. Johnston stated in order for the Plaintiff to be allowed to assist other inmate prisoners Thomas and the other inmate prisoner had to both sign agreement forms/contracts stating that they both

**43**

had permission from Smith and/or Johnston to work with each other. Administrative Rules ("AR") 59-LEG-01 does not state that anywhere in the Policies, which is attached hereto and is hereby incorporated herein by reference as **Exhibit – L**.

41. Johnston wrote the Plaintiff a conduct report stating "On the above date and time another inmate came to my office to pick up his legal work from the law computers that Thomas 561-064 had been helping him with. Thomas did not have permission to assist this inmate as the posted rules and DRC policy states hanging in the law library. Thomas knows the rules because he has been told several times by myself and Mr. Smith the Principal. **Thomas has been previously restricted from the library by Mr. Smith for 14 days for the same situation.** Inmates must have permission from a librarian and both inmates must sign an agreement form with a librarian." (*See*: Conduct Report – attached hereto and hereby incorporated herein by reference as **EXHIBIT – M** (Conduct Report Dated 1/27/2024 at 1:20pm in the Location of the Library)).

42. Wow!!! Talk about legal frustration, the hurdle bar being heightened to frustrate the Plaintiff, the deterrence involved in the instant matter to stop the Plaintiff from filing this lawsuit here, right now, in this Court, at this moment, against these Defendants, as they tried to cease the Plaintiff's filling's, but again, like the 'Energizer Bunny' the Plaintiff just keeps going, and going, and going and won't stop until **JUSTICE IS SO SERVED** against these ill weeded, bad seeded, ill-mannered ODRC Officials who are now named as Defendants for violating Thomas' Constitutional Rights secured under the United States Constitution.

43. Thomas was retaliated against for preparing this exact lawsuit against these exact Defendants, and a few others as time goes on, for retaliating against Thomas for engaging in protected

conduct and violating said Constitutional Rights of Thomas' for seeking to redress his claims on the court level.

44. Thomas filed a kite to the supervisor/Deputy Warden of Special Services Ms. Allen stating that: "This is my 3rd attempt sending this ICRF against Principal Smith for his inappropriate actions he took against me violating policy. I've sent this twice before, that is why it is dated for 7/10/23. I never received a response." *See*: (Kite – Dated 9/6/23, sent to (DWSS) Ms. Allen), *See*: **Exhibit – G**.

45. Thomas filed with that kite his administrative complaint/ICRF against Principal Smith stating that: "On or around 7/6/23 I was called to the Principal's office to pick up pending copies I had. Principal Smith began by telling me he wrote me 2-3 conduct reports for "assisting other inmates" with their legal work. I stated I can assist, I can't receive payment though. He then stated "Oh well, we'll be watching 'you' extra close and be paying more attention to you and will suspend you again if you continue." Pursuant to 59-LEG-01(V), I believe, I am protected and authorized to help and assist inmates on 'legal' actions (w/out payment) and that's all I was doing. Smith said to Plaintiff "No" you're not allowed and I will continue to suspend you and write you conduct reports if you continue." Smith and Officer Smith (1st shift library Officer) have hung my "blown-up picture"/"mug shot" up on the window for all of population to view and see. Since they have done this to me I have been approached by Officers and inmates inquiring as to what I did and who was I jacking-on (meaning masturbating) in which I do not engage in whatsoever. I have been made a joke of and insulted and my reputation has deprivated into deviant sexual activity as a direct result of Principal Smith and Officer Smith hanging my mug shot on a glass window for GP to see and view and become entertained by

45

this. END" *See*: (ICRF – Dated 7/10/23, sent to (DWSS) Ms. Allen), attached hereto and hereby incorporated herein by reference as **Exhibit – G**.

46. Thomas was suspended from litigating for Fourteen (14) days because Thomas was drafting legal lawsuits in preparation against these exact named Defendants herein known as Principal Smith and Librarian Johnston.

47. Johnston and Smith read Plaintiff's Claims and Plaintiff's Federal Complaint and deleted Plaintiff's suit off of the law library LEXIS NEXIS Word Processors in an attempt to deter and/or stop the Plaintiff dead in his tracks from further filing this Complaint. Johnston and Smith have failed, and here is Plaintiff's Federal Complaint finalized for this Court to view.

48. This Court must draw the inference that Thomas' First Amendment Rights secured under the United States Constitution have been clearly violated by Principal Smith's and Librarian Johnston's direct conduct and actions directed specifically towards Thomas for engaging in protected conduct.

49. Again, while drafting this Complaint to the Federal Court against Defendant Johnston, the Plaintiff herein has been written another conduct report by the assistant librarian J. Ervin, who is related to the Defendant making family members to one another, and as of 7/31/2024 the Plaintiff was again disciplined and given restrictions by the Unit Sergeant at RICI for again helping and assisting another inmate with his legal preparations, which is attached hereto and hereby incorporated herein by reference as **Exhibit – N** (Conduct Report Dated 7/31/2024, Reference No. RICI-24-007226, at 6:55pm in the Location of the Library), and it was written by Ms. J. Ervin for yet again helping another inmate with his legal preparation for the Federal Court on his behalf, and now, Johnston who has now changed her name to Ms. Ervin as she

46

has now married the 'assistant librarians' family member changing her last name from Johnston to Ervin.

50. Plaintiff was given Thirty (30) days Commissary Restrictions and Thirty (30) days Package Restrictions as a result of these conduct reports, which is erroneous in nature and violates the Plaintiff's Constitutional Rights and the Institutional Policies at RICI.

51. Therefore, because Johnston has changed her name and the Plaintiff has already drafted this Federal Complaint and has no time left to make the corrections, it will be left for an Amended Complaint to follow to correct her name from M. Johnston to M. Ervin pursuant to FRCP 15a.

**WHEREFORE, THOMAS SEEKS DAMAGES AGAINST DOUGLAS G. SMITH FOR:**

Thomas respectfully prays that this Honorable United States District Court for the Northern District of Ohio enter Judgment:

A. Emotional Distress in the amount of Twenty-Five Thousand Dollars and Zero Cent ($25,000.00);

B. Mental Anguish in the amount of Twenty-Five Thousand Dollars and Zero Cent (25,000.00);

C. Compensatory Damages in the amount of Two Hundred Thousand Dollars and Zero Cent ($200,000.00);

D. Punitive Damages in the amount of One Hundred Thousand Dollars and Zero Cent ($100,000.00);

E. Pain and Suffering in the amount of Fifty Thousand Dollars and Zero Cent ($50,000.00);

F. Constitutional Damages in the amount of Five Hundred Thousand Dollars and Zero Cent ($500,000.00);

47

**G.** Monetary Relief in the amount of One Hundred Thousand Dollars and Zero Cent ($100,000.00);

**H.** Injunctive Relief is sought in this Complaint and anything contrary in this Complaint notwithstanding, Injunctive Relief sought against Defendant Douglas G. Smith is not the only remedy which will cure the alleged violations. Additionally, anything in this Complaint notwithstanding, Plaintiff seeks all and each Injunctive Relief only as permitted as appropriate and applicable by law;

**I.** Declaratory Relief is sought pursuant to 28 U.S.C. § 2201 and § 2202, which provides for federal courts to declare rights and legal relations that are in controversy and remedy thereof to Thomas' Claims;

**J.** Thomas also seeks Attorney Fees pursuant to 28 U.S.C. § 1915 and any other relief that this Honorable Court might or may deem just and appropriate in conjunction with this Complaint and that damages be assessed against Defendants, collectively – as to Attorney Fees – for the violations alleged that were so directed at Thomas in violation of Thomas' Right to be Free from Retaliation protected by the United States Constitution's First Amendment and the Right to Due Process and Access to the Courts protected and prohibited by the United States Constitution's Fourteenth Amendment.

**WITNESSES TO THIS COMPLAINT/CLAIM AS OF RIGHT:**

William Venes #601596

**WHEREFORE, THOMAS SEEKS DAMAGES AGAINST M. JOHNSTON FOR:**

Thomas respectfully prays that this Honorable United States District Court for the Northern District of Ohio enter Judgment:

A. Emotional Distress in the amount of Twenty-Five Thousand Dollars and Zero Cent ($25,000.00);

B. Mental Anguish in the amount of Twenty-Five Thousand Dollars and Zero Cent ($25,000.00);

C. Compensatory Damages in the amount of Two Hundred Thousand Dollars and Zero Cent ($200,000.00);

D. Punitive Damages in the amount of One Hundred Thousand Dollars and Zero Cent ($100,000.00);

E. Pain and Suffering in the amount of Fifty Thousand Dollars and Zero Cent ($50,000.00);

F. Constitutional Damages in the amount of Five Hundred Thousand Dollars and Zero Cent ($500,000.00);

G. Monetary Relief in the amount of One Hundred Thousand Dollars and Zero Cent ($100,000.00);

H. Injunctive Relief is sought in this Complaint and anything contrary in this Complaint notwithstanding, Injunctive Relief sought against Defendant Librarian Johnston is not the only remedy which will cure the alleged violations. Additionally, anything in this Complaint notwithstanding, Plaintiff seeks all and each Injunctive Relief only as permitted as appropriate and applicable by law;

I. Declaratory Relief is sought pursuant to 28 U.S.C. § 2201 and § 2202, which provides for federal courts to declare rights and legal relations that are in controversy and remedy thereof to Thomas' Claims;

J. Thomas also seeks Attorney Fees pursuant to 28 U.S.C. § 1915 and any other relief that this Honorable Court might or may deem just and appropriate in conjunction with this

49

Complaint and that damages be assessed against Defendants, collectively – as to Attorney Fees – for the violations alleged that were so directed at Thomas in violation of Thomas' Right to be Free from Retaliation protected and prohibited by the United States Constitution's First Amendment and the Right to Due Procedural Process and Access to the Courts protected and prohibited by the United States Constitution's Fourteenth Amendment.

**WITNESSES TO THIS COMPLAINT/CLAIM AS OF RIGHT:**

William Venes #601596

## H. FIRST AMENDMENT RIGHT – RETALIATION CLAIM, FOURTEENTH AMENDMENT RIGHT – DUE PROCESS AND DELIBERATE INDIFFERENCE CLAIMS – EIGHTH AMENDMENT RIGHT – CRUEL AND UNUSUAL PUNISHMENT CLAIM

### h. SIPES

1. Plaintiff was taken to the Segregation Unit on 8/10/2023 for a "Refusal to Lock" that occurred in the 4 Lower Housing Unit with the Plaintiff and Officers Brianna Sutton and Joshua Brown.

2. Lieutenant Sipes is responsible for maintaining the security and safety of all prisoners who come through RICI's Segregation Unit for disciplinary measures and/or institutional investigations and protective security of certain prisoners whose safety could plausibly be in jeopardy.

3. Thomas was viciously sprayed by Keith with a chemical agent known as OC Pepper Spray – 'Fox' Mace at approximately 11:15PM on 8/10/2023 in the RICI Segregation Unit's Observation Cell under the Supervision of Sipes.

4. Thomas was not given anything to change into or soap and water to clean the residue off of Thomas. Thomas was thrown back into this Observation Cell and left there until the following morning at around noon.

5. At around noon the following day, 8/11/2023, Thomas was taken from the cell L2-151 and taken to another cell L3-121 and was tossed into that cell and was ignored for a total of Twelve (12) days as to asking about his down-range pack-up[3]. Thomas received nothing because of who he is.

6. Thomas asked, pleaded and begged for his property the entire time he was in the Segregation Unit for the dates of 8/11/2023 – 8/21/2023, the date when Officer Fields actually brought Thomas his Down-Range Pack-Up stating to Thomas "Damn man, they are fuckin' with you man, why will they not give you your property?" Fields then stated he knew where Thomas' property had been and that Fields was going to go retrieve that property for Thomas.

7. Officer Fields done just that. Officer Fields went and come back with Thomas' entire bag of clothing on 8/21/2023. Twelve (12) days after Thomas was sprayed and abandoned by the Segregation Unit's collective staff members. Sipes is and was the acting Lieutenant over the Segregation Unit and was in charge.

8. Thomas filed a total of Four (4) Appeals challenging his R.I.B. Guilty Findings that were issued against Thomas on 8/10/2023, thus, causing Thomas be segregated for a total of Twenty-Eight (28) days – finding Thomas guilty of both Physical Resistance to a Direct Order and Disobedience to a Direct Order. Both bogus Conduct reports, both hearings were held in the RICI kangaroo court in which found Thomas guilty of both of these alleged Rule violations

---

3    Down-Range Pack-Up consists of the prisoner's "GTL Tablet, hygiene, clothing, bedding and certain stationary materials. This is given to the prisoner immediately after being put into the Segregation Unit.

51

issued against Thomas on 8/10/2023 with no evidence whatsoever to support their verdict or position.

9. Because Thomas was segregated against his will for Twenty-Eight (28) days for the conduct reports alleged against Thomas in ¶ 12, supra, Thomas was sadistically punished for no reason whatsoever by R.I.B. just because who Thomas is and not what Thomas done wrong, therefore, Thomas missed the 'Celebration of Life' that was held in connection with his little brother's death.

10. Thomas appealed, challenging R.I.B.'s convictions, which Thomas turned them into Lieutenant Sipes personally in the Segregation Unit at RICI, and which were thrown away by Lieutenant Sipes and Thomas was then recommended for a change in his security Level requesting an Increase taking his current security level from a Two (2) making it to a Level Three (3) which is changing Thomas' Security status from a 'Medium' Security Offender to a 'maximum' Security Offender.

11. That is what Sipes caused the Plaintiff by interfering and throwing away or dismissing the Plaintiff's Appeals challenging Plaintiff's R.I.B. convictions, because Sipes knew that if Thomas did not win these Appeals, or at least some of them in part, that Thomas was definitely going to be leveled up and transferred out to an increased Security level Three (3) Penitentiary.

**WHEREFORE, THOMAS SEEKS DAMAGES AGAINST LIEUTENANT SIPES FOR:**

Plaintiff Thomas respectfully prays that this Honorable United States District Court for the Northern District of Ohio enter Judgment:

A. Emotional Distress in the amount of Twenty-Five Thousand Dollars and Zero cent ($25,000.00);

52

**B.** Mental Anguish in the amount of Twenty-Five Thousand Dollars and Zero Cent ($25,000.00);

**C.** Compensatory Damages in the amount of Two Hundred Thousand Dollars and Zero Cent ($200,000.00);

**D.** Punitive Damages in the amount of One Hundred Thousand Dollars and Zero Cent ($100,000.00);

**E.** Pain and Suffering in the amount of Fifty Thousand Dollars and Zero Cent ($50,000.00);

**F.** Constitutional Damages in the amount of Five Hundred Thousand Dollars and Zero Cent ($500,000.00);

**G.** Monetary Relief in the amount of One Hundred Thousand Dollars and Zero Cent ($100,000.00);

**H.** Injunctive Relief is sought in this Complaint and anything contrary in this Complaint notwithstanding. Injunctive Relief sought against Defendant Sipes is not the only remedy which will cure the alleged violations. Additionally, anything contrary in this Complaint notwithstanding. Plaintiff seeks all and each Injunctive Relief only as permitted as appropriate and applicable by law.

**I.** Declaratory Relief is sought pursuant to 28 U.S.C. § 2201 and § 2202, which provides for federal courts to declare rights and legal relations that are in controversy and remedy thereof Thomas's claims.

**J.** Thomas also seeks Attorney Fees pursuant to 28 U.S.C. § 1915 and any other Relief that this honorable Court might or may deem just and appropriate in conjunction with this Complaint and that damages be accessed against Defendants, collectively – as to Attorney Fees – for the violations alleged that were so directed at Thomas in violation of Thomas'

right to be free from cruel and unusual punishment protected and prohibited by the United States Constitution's Eighth Amendment and the First Amendment Right to Petition the Government for a Redress of Grievance without adverse action being taken against the Plaintiff, and Plaintiff's Fourteenth Amendment Right to Due Process and Equal Protection of the Law.

**WITNESSES TO THIS COMPLAINT/CLAIM AS OF RIGHT:**

Brandon Elder #783511
Allen Tillet #750862
Officer Fields
Officer Joshua Brown

## V. EXHAUSTION OF ADMINISTRATIVE REMEDIES

1. Plaintiff has exhausted all of his available administrative remedies with respect to all Claims and all Defendants in accordance with Federal Law and Statutes.

## VI. LEGAL CLAIMS OF SHAWN THOMAS

1. Thomas filed all of his administrative remedies in accordance with the Prison Litigation Act of 1997 in an effort to resolve these Constitutional violations on the institutional level, which ICRF's, NOG's and ACIO were all denied with little to no investigation whatsoever.

2. Thomas now seeks redress of this Court to enforce Judgment against these named Defendants listed in § III. ¶¶ 5-14, in their individual and official capacities as all named Defendants listed in § III. ¶¶ 5-14 acted while performing under color of state law as they were carrying out job duties for the Ohio Department of Rehabilitation and Corrections.

3. Thomas seeks Damages against Defendant Keith of a total of Four Million Dollars and Zero Cent ($4,000,000.00) for the Constitutional violations alleged in this complaint specifically for Using Excessive force against Thomas in violation of Thomas' Eighth Amendment right to be Free from Cruel and Unusual Punishment pursuant to the United States Constitution.

4. Thomas seeks Damages against Defendant Mandusic of a total of Seven Hundred Fifty Thousand Dollars and Zero Cent ($750,000.00) for the Constitutional violations alleged in this complaint specifically for causing the mere Retaliation sought against Thomas by Mandusic himself and Defendants Shrader, Robinson and Rineholdt as they acted in connection with Mandusic's illicit ill-mannered behavior and Retaliation phases against Thomas for utilizing the Exhaustion Process on the administrative level designed specifically by ODRC themselves.

5. Thomas seeks Damages against Defendant Shrader of a total of Seven Hundred Fifty Thousand Dollars and Zero Cent ($750,000.00) for the Constitutional violations alleged in this complaint specifically for Retaliating against Thomas in connection with Mandusic's illicit ill-mannered behavior and only because Thomas filed administrative complaints against Mandusic himself in the 5 Lower Housing Unit, and against Thomas for utilizing the Exhaustion Process on the administrative level designed specifically by ODRC themselves.

6. Thomas seeks Damages against Defendant Robinson of a total of Seven Hundred Fifty Thousand Dollars and Zero Cent ($750,000.00) for the Constitutional violations alleged in this complaint specifically for Retaliating against Thomas and segregating Thomas wantonly and sadistically in connection with Mandusic and Shrader's illicit ill-mannered behavior and only because Thomas filed administrative complaints against Mandusic himself in the 5 Lower Housing Unit, and against Thomas for utilizing the Exhaustion Process on the administrative level designed specifically by ODRC themselves.

7. Thomas seeks Damages against Defendant Rineholdt of a total of Seven Hundred Fifty Thousand Dollars and Zero Cent ($750,000.00) for the Constitutional violations alleged in this complaint specifically for Retaliating against Thomas and for Retaliating against Thomas and throwing his protected legal material out of her office onto the pavement of the prison yards

55

outside recreation yard which has over One Thousand inmate prisoner's walking around at any given time in which Rineholdt subjected deliberately Thomas' sensitive criminal and civil legal pleading outside of the 5 Lower Housing Unit and left it there unprotected for anyone to take. Fortunately for the Plaintiff, Defendant Robinson seen this and retrieved the legal box and had taken it back into her officer for safe keeping until Thomas could come and pick it up himself, which was done towards Thomas by Rineholdt only because Thomas had utilized the Exhaustion Process on the administrative level designed specifically by ODRC themselves.

8. Thomas seeks Damages against Defendant Smith of a total of One Million Dollars and Zero Cent ($1,000,000.00) for the Constitutional violations alleged in this complaint specifically for Retaliating against Thomas and suspending Thomas sadistically and maliciously for drafting complaints and lawsuits on a word processor which is designed for that purpose in the RICI law library and only because Thomas filed administrative complaints against other RICI Officials that Smith and Johnston themselves knows personally or knows of and attempted to protect them wrongfully and Smith and Johnston collectively suspended Thomas from litigating in the law library for Fourteen (14) days around the date of 7/1/2023 and for causing Due Process violations in accord with Thomas's First and Fourteenth Amendment Rights pursuant to the United States Constitution's First and Fourteenth Amendments for Retaliation and Court Access/Due Process and this conduct was done towards Thomas for utilizing the Exhaustion Process on the administrative level designed specifically by ODRC themselves.

9. Thomas seeks Damages against Defendant Johnston of a total of One Million Dollars and Zero Cent ($1,000,000.00) for the Constitutional violations alleged in this complaint specifically for Retaliating against Thomas and writing Thomas tainted and wrongful conduct reports which were done sadistically and maliciously for Thomas drafting complaints and lawsuits on a word

56

processor which is designed for that purpose in the RICI law library and only because Thomas filed administrative complaints against other RICI Officials that Johnston and Smith themselves knew or knows personally or knows of and attempted to protect them wrongfully and Johnston and Smith collectively suspended Thomas from litigating in the law library for Fourteen (14) days around the date of 7/1/2023 and for causing Due Process violations in accord with Thomas's First and Fourteenth Amendment Rights pursuant to the United States Constitution's First and Fourteenth Amendments for Retaliation and Court Access/Due Process and this conduct was done to Thomas for utilizing the Exhaustion Process on the administrative level designed specifically by ODRC themselves and Johnston furthermore continued to write Thomas conduct reports for helping other inmates with preparation of their legal pleadings for the next year causing Thomas to be subjected to disciplinary actions such as, but not limited to: commissary restrictions, GTL restrictions, visitation restrictions, package restrictions, phone restrictions, etc. Nineteen (19) of Twenty One (21) of Thomas' legal filing that were being prepared such as, but not limited to: This instant Federal Complaint/Lawsuit now pending before this Court, motions and pleadings to and for Thomas' criminal case and other civil cases Thomas is and was currently working on and/or had pending before the Ohio Court of Claims, and the Richland County Common Pleas Court which were also deleted after Johnston and Smith collectively caught on to what Thomas was drafting against them and their staff members/co-workers who they attempted to protect, but clearly failed and this conduct was done towards Thomas for utilizing the Exhaustion Process on the administrative level designed specifically by ODRC themselves.

10. Thomas seeks Damages against Defendant Sipes of a total of One Million Dollars and Zero Cent ($1,000,000.00) for the Constitutional violations alleged in this Complaint specifically

57

for a First Amendment Right – Retaliation Claim, for Fourteenth Amendment Right – Due Process and Deliberate Indifference Claims – and an Eighth Amendment Right – Cruel and Unusual Punishment Claim because Sipes deliberately withheld Thomas Down-Range Pack-up from Thomas, (meaning his clothes, hygiene and stationary materials) while being housed in the Segregation Unit, tossed Thomas into a cell without ever decontaminating Thomas first and procedurally and legally and leaving Thomas in a cell for a total of Twelve (12) days with Oleo Capsicum Resin Spray on Thomas causing severe irritation and burning and pain and suffering, and interfering with Thomas' Institutional Appeal Process while Thomas was in the Segregation Unit because Sipes had thrown out Thomas' Four (4) Appeals that Thomas handed in to Sipes challenging Thomas' R.I.B. convictions that were bogus and unfounded and written sadistically and only in an attempt to have Thomas rode to another higher level (level Three (3)) prison, causing more damage to Thomas' parole hearings and possibility of release with his parole and this conduct was done towards Thomas for utilizing the Exhaustion Process on the administrative level designed specifically by ODRC themselves.

11. Thomas seeks a total of Ten Millions Dollars and Zero ($10,000,000.00) from Defendants listed in § III. ¶¶ 5-14 for the Constitutional violations alleged in this Complaint and for the damages incurred to Thomas as a result of their conduct described therein.

12. Defendants listed in § III. ¶¶ 5-14, actions/inactions violated Thomas' Rights secured under the First, Eighth and Fourteenth Amendments to the United States Constitution, and these Defendants listed in § III. ¶¶ 5-14 also caused Thomas Pain and Suffering, Physical Injury, Mental Anguish, Emotional Distress, Embarrassment, Humiliation, as a direct result of their actions that were done to and towards Thomas sadistically, recklessly, maliciously, wantonly, intentionally, deliberately, viciously, hatefully, and the negligent evil-seeded and ill-mannered

behavior of these defendants listed in **§ III. ¶¶ 5-14**, and therefore, Thomas respectfully herein this Complaint that this Honorable United States District Court for the Northern District of Ohio Grant and Award Damages to Thomas in this case.

13. Compensatory Damages are invoked and authorized and awarded pursuant to R.C. § 2315.21 and should be awarded in this specific case at the second stage of trial as these specific named Defendants listed in **§ III. ¶¶ 5-14** do not believe that state law taked precedent over their ODRC institutional provisions and policies set out by ODRC themselves, and in that case it is the request of the Plaintiff to seek damages against each and every Defendant listed in **§ III. ¶¶ 5-14** within this Complaint to seek Damages against them for the reasons set *infra*:

14. A Jury may be permitted to assess Punitive Damages in an Action under § 1983; and

15. Defendants listed in **§ III. ¶¶ 5-14** have all shown that their conduct was in fact motivated by evil and intent acts, and involved the reckless and callous indifference to violate the Plaintiff's Federally protected Rights to the United States Constitution; and

16. Defendants listed in **§ III. ¶¶ 5-14** all are sued in their individual and official capacities and can therefore be held accountable for Punitive damages as they are not immune. **Smith v. Wade**, 461 U.S. 30, 103 S. Ct. 1625, 75 L. Ed. 2d 632 (1983).

17. An inmate has an undisputed First Amendment Right to file Grievances against Prison Officials on his own behalf. **Noble v. Schmitt**, 87 F.3d 157, 162 (6th Cir. 1996).

18. The Sixth Circuit recognizes that a prisoner's filings of a grievance can constitute protected conduct. **Herron v. Harrison**, 203 F.3d 410, 415 (6th Cir. 2000).

19. **Bloch v. Ribar**, 156 F.3d 673, 678 (6th Cir. 1998) sets the boundaries for a Retaliation Claim which are as follows: "(1) that the plaintiff was engaged in a constitutionally protected activity; (2) that the defendant's adverse action caused the plaintiff to suffer an injury that would likely

chill a person of ordinary firmness from continuing to engage in that activity; and **(3)** that the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights." Followed by **Thaddeus-X v. Blatter**, 175 F.3d 378, 1999 U.S. App. LEXIS 3497, March 8, 1999, Decided (6th Cir. 1999).

**VII.**     **PRAYER FOR RELIEF**

1. Granting Thomas Attorney Fees deemed appropriately fit by this Court or Upon Motion which damages are invoked and authorized pursuant to § 42 U.S.C. 1988;

2. Granting Thomas, a Declaration authorized pursuant to R.C. § 2721 that the acts and omissions described herein violated Thomas's Rights secured under the United States Constitution and Laws of the United States; and

3. A Preliminary and Permanent Injunction is authorized pursuant to R.C. § 2727.03 ordering Defendants listed in **§ III. ¶¶ 5-14** to cease their Retaliatory actions against and towards Thomas, the Plaintiff, for filing ICRF's, NOG's and ACIO on the institutional level and for the Defendant's to immediately remove Thomas from the 2 Upper Housing Unit as Thomas was moved there out of mere spite and retaliation because that is the Unit where all the disruptive inmates are sent to live, which Thomas is not part of and demands to be removed back to the 4 Lower or 2 Lower Unit to reside peacefully and without interference or interruption of DRC RICI staff retaliating against Thomas.

4. Granting Thomas Compensatory damages pursuant to R.C. § 2315.21, directed against each and every Defendant in the amount as specified *infra*:

   a. Thomas seeks One Million Dollars and Zero Cent ($1,000,000.00) against Defendants listed in **§ III. ¶¶ 5 – 7,** in Compensatory Damages, jointly, severally and collectively;

**60**

b. Thomas seeks Four Hundred Thousand Dollars and Zero Cent ($400,00.00) against Defendants listed in **§ III. ¶¶ 8 – 11,** in Compensatory Damages, jointly, severally and collectively;

c. Thomas seeks Four Hundred Thousand Dollars and Zero Cent ($400,00.00) against Defendants listed in **§ III. ¶¶ 12 – 13,** in Compensatory Damages, jointly, severally and collectively;

d. Thomas seeks Two Hundred Thousand Dollars and Zero Cent ($200,00.00) against Defendant listed in **§ III. ¶ 14,** in Compensatory Damages, jointly, severally and collectively;

5. Granting Thomas Punitive Damages pursuant to R.C. § 2315.21, directed against each and every Defendant in the amount as specified *infra*:

a. Thomas seeks Five Hundred Thousand Dollars and Zero Cent ($500,000.00) against Defendants listed in **§ III. ¶¶ 5 – 7,** in Punitive Damages, jointly, severally and collectively;

b. Thomas seeks Two Hundred Thousand Dollars and Zero Cent ($200,000.00) against Defendants listed in **§ III. ¶¶ 8 – 11,** in Punitive Damages, jointly, severally and collectively;

c. Thomas seeks Two Hundred Thousand Dollars and Zero Cent ($200,000.00) against Defendants listed in **§ III. ¶¶ 12 – 13,** in Punitive Damages, jointly, severally and collectively;

d. Thomas seeks One Hundred Thousand Dollars and Zero Cent ($100,00.00) against Defendant listed in **§ III. ¶ 14,** in Punitive Damages, jointly, severally and collectively.

61

6.  Thomas seeks these Damages against each Defendant, jointly and severally named within this Complaint and hereby incorporated herein by reference in **§ III. ¶¶ 5 – 14.**

7.  Thomas seeks a Jury Trial on all issues triable by Jury.

8.  Thomas seeks recovery of the costs involved in this suit.

9.  Thomas seeks any additional relief that this Honorable United States District Court for the Northern District of Ohio's Eastern Division deems appropriate, just, proper and equitable to this suit.

**Dated:** July 28, 2025.

**Respectfully submitted,**

Shawn Thomas #561064
Richland Correctional Institution
P.O. Box 8107
Mansfield, Ohio 44901

**Plaintiff,** *pro se*

## CERTIFICATE OF SERVICE

I, Shawn Thomas, hereby certify under penalty of perjury that the original "Complaint with Jury Demand" has been sent via United States Regular Mail, First Class, Postage prepaid, to: "United States District Court, Northern District of Ohio, Eastern Division, Clerk of the Court, Carl B. Stokes, United States Courthouse, 801 west Superior Avenue, Room 2-161, Cleveland, Ohio 44113-1830, by depositing said "Complaint" in the Richland Correctional Institution's mailbox on July 28, 2025.

**Respectfully submitted,**

Shawn Thomas #561064
Richland Correctional Institution
1001 Olivesburg Road
P.O. Box 8107
Mansfield, Ohio 44901

**Plaintiff,** *Pro se*

63