Rule 5120-9-04 | Appropriate supervision, discrimination and racial issues.

Ohio Administrative Code/5120/Chapter 5120-9 | Use of Force; Institutional Rules

Previous

Next

Effective:July 1, 2024Promulgated Under:111.15PDF:Download Authenticated PDF

(A) Discrimination with regards to supervision and administrative actions against any inmate or group of inmates, on the basis of race, color, religion, gender, sexual orientation, disability, age or national origin, by any staff member, or by any group or individual representing the department is strictly prohibited. Any substantiated acts of discrimination on the part of staff will be addressed through the employee disciplinary process, which may include such sanctions as suspension or removal.

(B) As used herein, the term "inappropriate supervision" means any continuous method of annoying or needlessly harassing an inmate or group of inmates, including, but not limited to, abusive language, racial/sexual derogatory slurs, and the writing of inmate conduct reports strictly as a means of harassment. A single incident may, due to its severity or egregiousness, be considered inappropriate supervision for purposes of this rule.

(C) To provide a monitoring mechanism to ensure conduct reports are not being issued strictly for harassment purposes the department of rehabilitation and correction shall keep a record of conduct reports written by each staff member. The record shall include a copy of the conduct report and its disposition.

(D) Inmates may always address issues of alleged discrimination, including inappropriate supervision by utilizing the inmate grievance procedures in accordance with rule 5120-9-31 of the Administrative Code.

(E) Notwithstanding paragraph (D) of this rule, when any staff member receives an inmate complaint that appears to allege inappropriate supervision as defined by this rule, the staff member shall immediately forward the complaint to the inspector of institutional services for review.

(F) If after review the inspector of institutional services determines the complaint to constitute a possible violation of appropriate supervision the following procedure shall apply:

PLAINTIFF'S EXHIBIT D

(1) The inspector of institutional services shall promptly interview the inmate who wrote the complaint. The inmate shall at this time be advised of the availability of the inmate grievance procedures if the inmate wishes to pursue the complaint on his own behalf.

(2) Regardless of the inmate's decision whether or not to utilize the inmate grievance procedures, if the inspector of institutional services, based on his interview with the inmate, finds that the inmate's complaint may have merit, the inspector of institutional services will conduct further investigation, including conducting interviews of the staff member(s) involved, potential or identified witnesses, and anyone else the inspector of institutional services feels may have relevant testimony to give, and video footage to include body worn camera footage. If relevant to the complaint, the inspector of institutional services shall review the staff member's conduct report writing record.

(3) After the inspector of institutional services has completed the investigation, the inspector of institutional services shall then make a conclusion as to whether or not the supervision of the staff member was appropriate. If the inspector determines the supervision was inappropriate, the inspector will write a report to the managing officer that will include the incarcerated adult's original complaint, the inspector of institutional services' finding of fact, and the evidence upon which the finding is based. In cases where the inmate has filed a grievance, the inspector of institutional services will also provide the inmate with a disposition to the grievance, which will include the inspector of institutional services' findings, consistent with rule 5120-9-31 of the Administrative Code. The inspector's report to the managing officer shall also serve as the administrative investigation into conduct which may be in violation of departmental policies procedures and/or rules. The inspector's report may be used to support employee disciplinary actions.

(4) The managing officer may order additional investigation, if the managing officer deems necessary. At the point the managing officer decides the incident has been thoroughly investigated, the managing officer will take any appropriate action necessary.

(5) A copy of all documents related to the complaint and investigation, including the report to the managing officer and the managing officer's response, if any, shall be maintained by the inspector of institutional services in accordance with the established and applicable record retention schedule.

(G) All employee orientation and in-service training and staff development will include extensive programs in interpersonal communications and human relations, including appropriate supervision and cultural sensitivity.

(H) So far as reasonably possible, and consistent with all other applicable constitutional and statutory requirements, institutional programs and work assignments should closely reflect the racial composition of the institution's inmate population.

Last updated July 1, 2024 at 4:28 PM

Supplemental Information

Authorized By: 5120.01

Amplifies: 5120.05

Five Year Review Date: 1/18/2029

Prior Effective Dates: 12/31/1976, 7/18/1983, 7/18/1997, 4/16/1999, 7/1/2004, 8/19/2004, 4/1/2009, 6/24/2013, 5/23/2014



PLAINTIFF'S
EXHIBIT
E
www.legalstore.com No. 7002

## KITE PROCEDURE

1. Check with your Sergeant or Case Manager to see if this communication can be handled without a kite.

2. Write only to the Department that handles the problem you have. Others will merely forward your kite.

3. State your problems clearly and completely and thereby get immediate attention.

4. Avoid duplication of Kites, Writing to more than one office about the same thing will not obtain any faster attention.

5. Kites are to be used only for communication between inmates and Institutional Staff and not for any other purpose.

---

Number: 561064  Name: Thomas  Date: 9/5/23

Unit: 4  Lock: B 93  Assignment: Inside Vehicle Driver

Issued By (Staff Member Signature):

To:

FOLD HERE

| | |
|---|---|
| CASE MANAGER | WARDEN |
| CLASSIFICATION | DEPUTY WARDEN ADMINISTRATION/ SPECIAL SERVICES/ PROGRAMS |
| COMMISSARY | |
| DENTAL | DEPUTY WARDEN OPERATIONS |
| USE HEALTH SERVICES REQUEST FORM, DRC5373 TO ACCESS DENTAL CARE | INST. INSPECTOR |
| MEDICAL | INVESTIGATOR |
| USE HEALTH SERVICES REQUEST FORM, DRC5373 TO ACCESS MEDICAL CARE | JOB COORDINATOR |
| MAJOR MENTAL HEALTH | LIBRARY |
| | MAIL ROOM |

| |
|---|
| QUARTERMASTER |
| RECORDS |
| RECOVERY SERVICES |
| RECREATION |
| RELIGIOUS SERVICES |
| UNIT MANAGER |
| EDUCATION |
| FOOD SERVICE |
| OTHER |

DRC 2005 (Rev. 02/13)

---

## KITE PROCEDURE

1. Check with your Sergeant or Case Manager to see if this communication can be handled without a kite.

2. Write only to the Department that handles the problem you have. Others will merely forward your kite.

3. State your problems clearly and completely and thereby get immediate attention.

4. Avoid duplication of Kites, Writing to more than one office about the same thing will not obtain any faster attention.

UM Robinson,                                9/5/03

This is my 3rd attempt sending
this IGRF dated back from 6/29/23
against Secretary Rinehart for throwing
my legal box out of 5 House onto
the pavement/Entry way of 5 House &
the Yard.

INFORMAL COMPLAINT RESOLUTION FORM                                    Richland
ACA-4271 (DRC-4151)

To: Investigator                                            Date: 6-29-23

Shawn Thomas #561064        4A19

On 6/27/2023, Tuesday at approximately 1-2 pm Secretary Rinehold, from 5 Lower noticed I was standing outside of 5 lower unit waiting on an inmate when she began yelling for me to "come here" which I refused.

She then had two (2) "unknown to me" inmates carry my 2.4 cardboard legal box out from 5 lower and tossed my 2.4 legal box (unsecured) out in the middle of the asphault parking lot area of 5 lower and Rinehold was screaming to me from inside of 5 lower "Yeah Motherfucker; but You git Your legal shit out of my office and unit now you dumb ass fuck!!!" and she stormed back into 5 lower.

I, with my hernia, had to lift that box which weighed probably over 100 pounds and I have been instructed by Medical over the past 10-15 years to not lift more than 10 pounds. Because of Rinehild's conduct, I had to risk injuring myself and drag my 2.4 legal card board box back into 5 lower - out of place - where Ms. Robinson seen this happen and she secured my 2.4 legal box until I could retrieve a cart from 4 lower to get my property.

This is further Retaliation from the 5 lower unit and it violates Policy 64-DCM-01/05 Policy 31-SEM-01/02 & AR 5120-9-04(B).                     -END-



PLAINTIFF'S
EXHIBIT
5

## KITE PROCEDURE

1. Check with your Sergeant or Case Manager to see if this communication can be handled without a kite.

2. Write only to the Department that handles the problem you have. Others will merely forward your kite.

3. State your problems clearly and completely and thereby get immediate attention.

4. Avoid duplication of Kites, Writing to more than one office about the same thing will not obtain any faster attention.

5. Kites are to be used only for communication between inmates and Institutional Staff and not for any other purpose.

Number: Talley

Name: Thomas

Assignment: Inmate Vehicle Driver

Date: 9/6/23

Unit: 4

Lock: B 95

To: (DUBS) MS ALLEN

Issued By (Staff Member Signature):

**FOLD HERE**

| | |
|---|---|
| CASE MANAGER | WARDEN · QUARTERMASTER |
| CLASSIFICATION | DEPUTY WARDEN ADMINISTRATION/ · RECORDS |
| COMMISSARY | SPECIAL SERVICES/ PROGRAMS · RECOVERY SERVICES |
| DENTAL USE HEALTH SERVICES REQUEST FORM, DRC5373 TO ACCESS DENTAL CARE | DEPUTY WARDEN OPERATIONS · RECREATION |
| | INST. INSPECTOR · RELIGIOUS SERVICES |
| MEDICAL USE HEALTH SERVICES REQUEST FORM, DRC5373 TO ACCESS MEDICAL CARE | INVESTIGATOR · UNIT MANAGER ___ |
| | JOB COORDINATOR · EDUCATION |
| MAJOR MENTAL HEALTH | LIBRARY · FOOD SERVICE |
| | MAIL ROOM · OTHER ___ |

DRC 2005 (Rev. 02/13)

## KITE PROCEDURE

1. Check with your Sergeant or Case Manager to see if this communication can be handled without a kite.

2. Write only to the Department that handles the problem you have. Others will merely forward your kite.

3. State your problems clearly and completely and thereby get immediate attention.

4. Avoid duplication of Kites, Writing to more than one office about the same thing will not obtain any faster attention.

Case: 1:25-cv-01704-JPC Doc #: 1-7 Filed: 08/15/25 12 of 52. PageID #: 146

Ms. Allen                                    9/6/23

    This is my 3rd attempt sending this ICAF against Principal Smith for his inappropriate Actions he took against me violating Policy. I've sent this twice before, that is why it is dated for 7/10/23. I never received a response.

RICI | INFORMAL COMPLAINT RESOLUTION FORM "ICRF" | DISS Allen

Shawn Thomas #561064 | 4A19 | 7/10/23

RE: Defamation of Character / Inappropriate Supervision / Retaliation / Discrimination / Falsification & Threats.

On or around 7/6/23 I was called to the Principal's Office to pick up pending copies I had. Principal Smith began by telling me he wrote me 2-3 conduct reports for "assisting other inmates" with their legal work. I stated I can assist, I can't receive payment though. He then stated "Oh, well, we'll be watching 'you' extra close and be paying more attention to you and will suspend you again if you continue."

Pursuant to 59-LEG-01(V), I believe, I am protected and authorized to help and assist inmates on 'legal' actions (w/out payment) and that's all I was doing. Smith says "No" you'll Not allowed and I will continue to suspend you and write you conduct reports if you continue."

Principal Smith and Officer Smith (1st shift library officer) have hung my "blown-up picture"/"mug shot" up on the window for all of population to view and see. Since they have done this to me I have been approached by officers and inmates inquiring as to what I did and who was I jacking-on (meaning masturbating) in which I do Not engage in whatsoever. I have been made a joke of and insulted and my Reputation has deprivated into deviant sexual activity



## Department of Rehabilitation & Correction

DRC.Ohio.gov

Mike DeWine, *Governor*    Jon Husted, *Lt. Governor*    Annette Chambers-Smith, *Director*

To:     Incarcerated Persons

From:   Stacy Wicks, Library Administrator I, OCSS

Re:     Law Library Use

Date:   2/8/2024

Hello everyone,

OCSS would like to remind all offenders that the computers in the Law Libraries are to be used for **legal work only**. This legal work must be pertaining to any current and open cases.

Library staff reserves the right to ask for proof of any open cases and deadlines. Library staff also reserves the right to deny printing if they find anything not related to a legal case. Please keep in mind that using the law library computers is a privilege, as all courts in Ohio do accept handwritten motions and forms. This privilege can be removed if time spent in the Law Library is abused; this time could be used by someone who does have an open case and a deadline.

Thank you for your cooperation,
Stacy Wicks *Stacy P Wicks*

Library Admin 1, OCSS



PLAINTIFF'S EXHIBIT
H

4545 Fisher Rd, Suite D          614 | 387.0588          drc.ohio.gov
Columbus, OH 43228

The State of Ohio is an Equal Opportunity Employer and Provider of ADA Services



**Department of Rehabilitation & Correction**

# Conduct Report

| | | |
|---|---|---|
| Name: THOMAS, SHAWN | Number: A561064 | Institution: RICI |
| Case Number: RICI-23-006660 | Date of Violation: 08/08/2023 | Time of Violation: 09:30 AM |
| Location of Violation: Library | | Lock: H4/B/0119 |

| Charged Rules | Rule Description |
|---|---|
| 5.2 | Disobedience of a direct order. |
| 7.2 | Forging, possessing, or presenting forged or counterfeit documents. |

**Supporting Facts (Describe what occurred and how the inmate violated the rule[s]):**

On 8/8/2023 at approximately 9:30 am, assistant librarian Ervin came to me and gave me a document I/A 561064 Thomas created on a Law Library computer. The previous day (8/7/2023), I had a conversation with I/A 561064 Thomas to not re-create DRC documents on the computers and that he is to complete an informal complaint on either his GTL tablet or a paper kite. I reminded I/A 561064 Thomas that the Law Library computers are used for legal materials only, not to re-create DRC documents. All documents can be requested to view through the Librarian Ms. Johnston, or Asst. Librarian Ms. Ervin. EOR

Is this Conduct Report being written on behalf of another ? Yes ☐ No ☑

Does the Charging Official wish to have input into the disciplinary proceedings? Yes ☐ No ☑

| Electronic Signature of Charging Official : D SMITH | Shift: 4th | Days Off: Sat and Sun |
|---|---|---|

A copy of this conduct report was served upon the above-named inmate on: August, 09, 2023, at 15:05 PM

| Staff Electronic Signature: M KENNEDY |
|---|

I acknowledge receipt of the conduct report on the above stated date and time:

| Inmate Signature: *Thomas* | Number: A561064 |
|---|---|

Notification to Inmate: a conviction could result in loss of earned credit and 201 additional hearing.

DRC 4018 (Rev 08/2023)



PLAINTIFF'S
EXHIBIT

I

 **Department of
Rehabilitation
& Correction**

# Disposition of the Rules Infraction Board

| Institution: RICI | RIB Case Number: RICI-23-006660 |
|---|---|
| Inmate Name: THOMAS, SHAWN | Number: A561064 |
| Date Of Hearing: 08/15/2023 | Time: 01:21 PM |

| Charged Rules | Rule Description |
|---|---|
| 5.2 | Disobedience of a direct order. |
| 7.2 | Forging, possessing, or presenting forged or counterfeit documents. |

Did the inmate attend the hearing? ☑ Yes ☐ No

Inmate Plea: Not Guilty Rule(s): 5.2,7.2

State the facts that explain the board's decision:

The board does believe Offender Thomas did re create DRC documents and they are added to the case in the attachments provided by Mr. Smith.

Particular evidence or statements relied on:

Conduct report-Offenders plea/Testimony/evidence

Was the inmate informed or the right to be heard in his own behalf? ☑ Yes ☐ No

Did the inmate offer any defense? ☐ Yes ☑ No

Did the board rely on any confidential statement(s)? ☐ Yes ☑ No

Disposition of the Hearing Officer is: ☑ Affirmed ☐ Returned for reconsideration

☐ RIB recommends a Security Review be conducted

Disposition Imposed:

90 Day GTL Messaging/Phone, Package, Commissary $20 limit to hygiene only, Visit restrictions, I care, Fundraiser Restriction -effective 8/16/2023-11/16/2023

Did any person other than the board member participate in the dicussion of the board's findings?(if yes, explain) ○ Yes ◉ No

We certify that this is a true record of proceedings of the Rules Infraction Board:

| Electronic Signature RIB Chairperson: S DAUGHERTY | Decision: Guilty | Date: 8/16/2023 |
|---|---|---|
| | Decision: Guilty | Date: 8/16/2023 |

receiving of disposition.

| | |
|---|---|
| | Date: 8/16/2023    Time: 08:55 AM |
| Inmate signature: | |

## Result Of Warden's Administrative Review

**RIB CASE NUMBER:** RICI-23-006660

Upon reviewing the proceeding and the disposition of the Rules Infraction Board, I have determined that the board's decision should be: <u>Affirmed</u>

☐ Warden recommends a Security Review be conducted

**Notes:**

There was evidence to support the decision of the Rules Infraction Board. The penalty assessed is authorized and appropriate. Case was heard in complaince with the AR.

| | |
|---|---|
| **Warden or Designee's Electronic Signature:  D MELTON** | Date: 08/16/2023 |

DRC 4024 (Rev 08/2023)

 **Department of Rehabilitation & Correction**

## Legal Services Decision On Appeal

| | |
|---|---|
| **Institution:** RICI     **Current lock:** H4/B/0095 | **RIB Case Number:** RICI-23-006660 |
| **Inmate Name:** THOMAS, SHAWN | **Number:** A561064 |

**Guilty Rules:**     5.2,7.2

**RIB Date:**     08/15/2023

**Inmate Appeal Date:**     09/05/2023

**Appeal Decision :**     Denied

**Response to Appeal:**

The appeal contends there is a procedural error but proceeds to argue the facts of the case, essentially arguing that his actions are appropriate despite a direct order to not re-create a DRC form. If Thomas wishes to complete an informal complaint resolution form, then he should follow the proper process. If he needs copies of previously submitted complaints, then he should work with staff to complete the process rather than re-creating the forms. The appeal is denied and the RIB decision is affirmed.

**Electronic Signature:**   B TURNER            **Date:** 10/4/2023

DRC 4377 (Rev. 08/2023)



# Department of Rehabilitation & Correction

Tuesday August 29 2023 7:30 AM

## Notice of Appeal - Classification Action

Appeal to Warden of recommendation made by the Classification Committee

(Inmate should send his appeal to the Warden or designee within 7 days of notification by classification committee)

*Note to inmate: You should return this appeal back to your unit staff and they will scan and attach this appeal electronically to your classification hearing. The appeal will then be placed on the list for the Warden/Designee to respond to you.*

| Inmate Name: THOMAS, SHAWN | Number: A561064 | Institution: RICI |
|---|---|---|

I am appealing the recommendation of the Security Review committee to place me at Level 3 on 08/29/2023 at RICI.

(Appeal must be filed with the Warden or designee by 09/05/2023)

In my opinion this decision is incorrect for the following reasons:

*WARNING: You must state clearly and in detail the reasons you feel the recommendation is incorrect. This includes all procedural objections.*

I have pending appeals to the Chief Legal Counsel for 4 RIB Hearings: RICI-23-006660; RICI-23-006723; RICI-23-006737; and RICI-23-006763. I have been a Level 2 inmate with -1 point for 10+ years. There is a pending 42 USC §1983 civil action being prepared and now ready to be sent to the Cleveland U.S. Federal Courthouse for 1st Amendment Violations of Retaliation from 4 and 5 Lower Unit Staff members. My RIB Hearings were Procedurally defective as Sgt. Daugherty was partial, bias and made comments as to "Riding me out" well before she began my RIB Hearings. Daugherty and Adkins, RIB officers, did not review or properly review any evidence, did not deliberate as Daugherty kept (in all 4 of my Hearings) saying "Alright, we'll take a minute to deliberate" looked down at her computer screen, then by herself, came back and said "We find you guilty. It was only Daugherty that made the decisions. Review the RIB Audio Recordings. They're proof! RIB Hearing RICI-23-006723 was held 8 days after it was Referred to RIB. Daugherty still found me guilty. That's under appeal Right now. I appealled the other 3 to Chief Legal Counsel and am waiting on their decision, MH Dr. Mrs Michaels is fully aware and can testify as to the 4 Lower Retaliation I've been going through. I am not a security threat! One quarter of the tickets I Received in 4 Lower were thrown out/dismissed or held w/out me by the Sgts. Those are violative actions alone. Now those same officers Adkins + Hickman Continously wrote me frivolous conduct Reports In a means to get me disciplined spitefully for verbally complaining about them to the UM In 4 Lower, Aubrey. I also filed hand written complaints.

**(TURN OVER - BACK SIDE)**

| Signature: *Thomas* | Number : A561064 | Date: 8/29/23 |
|---|---|---|

*ODRC Staff: When appeal (DRC 2680) is received back from the inmate, you should go to CFRMI in DOTS PORTAL to the classification hearing dated 8/28/2023. Click on the scan button under the Warden's Appeal to open the review, and you will upload the file to the teal upload section (3.1 Appeal to Warden). The form should be scanned in PDF format.*

DRC2680

PLAINTIFF'S EXHIBIT
J

During my security Review, I was told that my conduct Reports were Reviewed from the past 13-24 months and held against me also, giving me even more points. How does that work when I had -1 point from April of 2022 and April of 2023 and those conduct Reports were already Reviewed and held against me during the 2022-2023 annual grace period? That's like double jeopardy. Punished twice over for the same conduct Reports. My conduct reports from 2022-2023 should NOT have counted as "points" for this security Review that took place. RIC1-23-006737 states I was sanctioned to 28 RH Days, 60 Day GTL Messenging/Phone, Package, Commissary 20 dollar limit/hygiene only. Visit restrictions, Icare, Fundraiser Restriction effective 8/15/2023 - 10/15/2023. It does Not State Nor Specify how the three separate Rule violations were acessed against me. What sanction did I receive for Rule Violation 5.1? And 5.2? And 16.1? I feel that that alone is a Procedural Error in my sanctioning phase. It does not support as to each Rule violation how my sanction was applied. Therefore, this should be overturned also as further Procedural Error. Also, in the Disposition it clearly states "Did the inmate off any defense?" RIB Sgt. Daugherty Stated/checked Box "NO" but further stated above where the Disposition states "State the facts that explain the board's decision" Daugherty writes "The board believes the conduct Report does support all charges and Offender Thomas "says it did happen he was sleeping and didn't hear them"" therefore, Thomas made a defense, and Daugherty lied and made a second Procedural Error in her Disposition dated for 8/15/23-case No. RIC1-23-006737 at 1:51pm, further stating on Record/Disposition that Thomas never made a defense, though he did, in full. Listen to the Audio Recording, you'll hear Thomas saying way more than Daugherty alleged he said. Violating Thomas Due Process Rights. I've been trying to go to Units 1, 2, or 3 Lower to avoid further Retaliation, but um Awbrey states I am stuck in 4 Lower. Why in the 10+ years I have been here at RICI, I cannot go to Units 1, 2 or 3 Lower to avoid these Vindictive officers I been complaining of in 4 Lower? The more I complained - the more they wrote me tickets. I went to the law library b/c I had NO GTL Tablet to file ICRF's on, caught a verbal warning on 8/7/23 by Mr. Smith for creating my ICRF's on the Law Library Computers. 8/8/23 I filed new Complaints in Regular "legal text form" to be told I was still Re-creating & forging DRC Documents - though my new Complaints on 8/8/23 were Not duplicated (or) based ony DRC Heading, Form #'s or Field/Check Boxes Replicating any type of DRC Form, and Mr. Smith wrote me a conduct Report for that. These were all in my Name, No one else's. Supposedly, the Librarians saved both of them for evidence. My Conduct Report dated 8/10/23 is Procedurally Defective as the cell Location in the Body of it states (L2-153) but at the Top for LOCK: it shows L1-153

?IC1-23-006060

 **Department of Rehabilitation & Correction**

# Conduct Report

| | | |
|---|---|---|
| Name: THOMAS, SHAWN | Number: A561064 | Institution: RICI |
| Case Number: RICI-24-000807 | | Time of Violation: 01:05 PM |
| Location of Violation: Library | | Lock: H4/B/0003 |

| Charged Rules | Rule Description |
|---|---|
| 5.2 | Disobedience of a direct order. |

**Supporting Facts (Describe what occurred and how the inmate violated the rule[s]):**

On the above date and time inmate Thomas 561-064 came to my office door demanding to know which librarian called his dorm and had an officer shake him down looking for stolen law library materials. I told him he did not have the right to question me about that. He became very agitated and argumentative and told me he did have the right to know. I told him to leave and he did not, he continued to argue. I again told him he needed to leave and he did not. I had to tell him 3 more times to leave before he actually left.

Is this Conduct Report being written on behalf of another ?    Yes ☐    No ☑

Does the Charging Official wish to have input into the disciplinary proceedings?    Yes ☐    No ☑

| Electronic Signature of Charging Official : M JOHNSTON | Shift: varies | Days Off: S/M |
|---|---|---|

A copy of this conduct report was served upon the above-named inmate on: February, 02, 2024, at 11:28 AM

Staff Electronic Signature:  M KENNEDY

I acknowledge receipt of the conduct report on the above stated date and time:

| Inmate Signature: *(signature)* | Number: A561064 |
|---|---|

Notification to inmate: a conviction could result in loss of earned credit and 201 additional hearing.

DRC 4018 (Rev 08/2023)

PLAINTIFF'S EXHIBIT K

| SUBJECT:<br>**Incarcerated Person Access to Court and Counsel** | PAGE ___1___ OF __8__ . |
|---|---|
| | NUMBER: **59-LEG-01** |
| ORC/OAC REFERENCE:<br>ORC 5120.01; OAC 5120-9-17,<br>OAC 5120-9-18, 5120-9-19, 5120-9-20,<br>OAC 5120-9-33, 5120-9-55 | SUPERSEDES:<br>59-LEG-01 dated 12/02/2019 |
| RELATED ACA STANDARDS:<br>5-ACI-3D-01, 3D-02, 3D-03, 3D-07,<br>5-ACI-7D-03 | EFFECTIVE DATE:<br>**March 27, 2023** |
| | APPROVED: |

**Ohio** | Department of Rehabilitation & Correction

## I.   AUTHORITY

Ohio Revised Code 5120.01 authorizes the Director of the Department of Rehabilitation and Correction, as the executive head of the department, to direct the total operations and management of the department by establishing procedures as set forth in this policy.

## II.   PURPOSE

The purpose of this policy is to establish guidelines that ensure incarcerated people have adequate access to courts, attorneys, and legal research materials.

## III.   APPLICABILITY

This policy applies to all institutional employees and all persons incarcerated with the Ohio Department of Rehabilitation and Correction (ODRC).

## IV.   DEFINITIONS

The definitions for the below listed terms can be found at the top of the policies page on the ODRC Intranet at the following:

Definitions Link
- **Departmental Offender Tracking System (DOTS)**
- **General Legal Materials**
- **Illiterate Incarcerated Person**
- **Incarcerated Person Citrix Network**
- **Indigent Incarcerated Person**
- **Legal Disc**
- **Legal Mail**
- **Personal Legal Materials**



PLAINTIFF'S
EXHIBIT

L

DRC 1361 (Rev. 12/17)

| SUBJECT: Incarcerated Person Access to Court and Counsel (59-LEG-01) | PAGE 2 OF 8 |
|---|---|

## V.    POLICY

It is the policy of the ODRC to permit incarcerated person access to legal counsel by means of visitation which will permit confidential communication, uncensored written correspondence, and telephone communication. Incarcerated people shall have access to courts so that they may challenge their convictions, sentences, or the conditions of their confinement. Incarcerated people who are foreign nationals shall have access to the diplomatic representative of their country of citizenship. Pursuing such legal matters shall not subject the incarcerated person to reprisals or punishment of any sort.

## VI.    PROCEDURES

### A.    Law Library

1. Each institution law library shall, at a minimum, provide access to the following materials in electronic format:

   a. Published decisions of the U.S. Supreme Court, Federal Courts of Appeals, U.S. District Courts, Ohio Supreme Court, Ohio Courts of Appeal, Common Pleas Courts, and the Court of Claims.

   b. U.S. Code, U.S. Constitution, Federal Rules of Civil Procedure, Federal Rules of Criminal Procedure, Federal Rules of Evidence, Federal Rules of Appellate Practice, and Rules of the Federal Courts located in Ohio.

   c. Ohio Revised Code, Ohio Constitution, Ohio Rules of Civil Procedure, Ohio Rules of Criminal Procedure, Ohio Rules of Evidence, Ohio Rules of Appellate Practice; Ohio Rules of Court.

   d. Ohio Administrative Code.

   e. A means of cross referencing, following history of cases or statutes, etc. such as through Shepard's Citations, or some other method.

2. In addition, the institution law library shall provide access to the printed materials listed in Appendix A of this policy.

3. ODRC Policies, excluding security policies, may be provided either electronically or as hardcopy.

4. Each law library shall establish a schedule of reasonable hours that provide incarcerated persons with adequate access to legal materials. At least some of these hours shall not conflict with normal work assignments, visitation, counseling, or other programs, and shall include weekend and evening hours.

5. Each law library shall facilitate the access of incarcerated people who are foreign nationals to the diplomatic representative of the country of their citizenship by maintaining a current copy of the U.S. Government Publication entitled "Foreign Consular Offices in the United States."

DRC 1362

| SUBJECT: Incarcerated Person Access to Court and Counsel (59-LEG-01) | PAGE 3 OF 8 . |
|---|---|

**B.    Incarcerated Person Clerks**

1.    Incarcerated person clerks may be employed in the law library to assist incarcerated people in the use of legal materials, to maintain the library collection, for typing and other clerical duties. Such clerks shall operate under the direct supervision of the librarian or other staff member designated by the managing officer.

2.    The staff member designated by the managing officer shall determine the duties of the clerk positions in the law library. This staff member shall assign tasks to the incarcerated person clerks. The clerks shall not be permitted to take it upon themselves to determine which incarcerated people they will assist or what tasks they will perform. Incarcerated person clerks shall not be permitted to supervise other incarcerated people or assign tasks to other incarcerated people.

3.    Incarcerated people requesting assistance with typing, reading, writing, or researching legal materials or documents shall request such assistance from a staff member designated by the managing officer who may assign the specific task to one of the incarcerated person clerks.

**C.    Illiterate Incarcerated Person**

1.    Illiterate incarcerated people, or incarcerated people who have physical or mental impairments which prevent them from reading or writing, may request assistance in preparing their initial pleadings to be filed with a court. Such assistance may include assistance with reading or writing their initial pleadings. These requests for assistance must be directed to the staff person designated by the managing officer who shall ensure that the necessary assistance is made available.

2.    Incarcerated people requiring the assistance of a translator may receive such assistance from a staff member, incarcerated person, and volunteer or, if necessary, a person retained under contract for such purpose.

3.    Incarcerated people shall be instructed, both orally and in writing, on how they may obtain assistance in preparing or filing initial pleadings with the court. This information shall also be conveyed in a manner that is reasonably calculated to reach the incarcerated person who might need such assistance.

**D.    Legal Service to Indigent Incarcerated People**

1.    An indigent incarcerated person shall receive a free legal kit containing, at a minimum, the items listed in Appendix B from the Law Library. The incarcerated person shall direct their request to the librarian, or other staff person designated by the managing officer, who shall confirm the incarcerated person's indigent status with the Cashier's Office and maintain a log of free kits issued utilizing Indigent Kit Log (DRC1005). An incarcerated person may make such request once every thirty (30) days.

DRC 1362

| SUBJECT: Incarcerated Person Access to Court and Counsel (59-LEG-01) | PAGE___4___OF___8__ |
| --- | --- |

2. An indigent incarcerated person is also entitled to free first-class mail to courts of law only. To be eligible for free first-class mailing, an indigent incarcerated person must address the mail to the "Clerk of Court" and must also identify the specific court by name above the address. Mail addressed to an individual other than the court's Clerk of Court or that does not identify the specific court name is not entitled to free first-class mail, and shall be returned to the indigent incarcerated person with an indication to the incarcerated person that the mail, as addressed, is not entitled to free postage because it is not addressed to the Clerk of Court, does not identify the name of the court, or both, as the case may be. The free mail to courts of law for indigent incarcerated people is in addition to the one (1) free stamped envelope per month available to all incarcerated people.

**E.    Legal Materials**

1. Incarcerated people are permitted to possess a reasonable amount of general and personal legal materials.

2. General and personal legal materials shall be maintained within the incarcerated person's overall 2.4 cubic feet property limitation as provided in Ohio Administrative Code (OAC) 5120-9-33, Packages and Property Restrictions, and applicable institutional policies. General legal materials are subject to the general possession limits applicable to books, law books, stationery, or writing materials, etc. as provided in OAC 5120-9-33, Packages and Property Restrictions, and ODRC Policy 61-PRP-01, Personal Property - Incarcerated People Personal Property, and applicable institutional rules and policies.

3. Incarcerated people are required to keep personal legal materials organized by title and case number. Each document associated with a case shall be identified with at least the correct case number.

4. Incarcerated people may be required to produce a list of their active cases any time such materials are packed up and placed in storage for any reason. This list shall identify each active case by title of the case, case number, and the court in which the action is pending.

5. If an incarcerated person has personal legal material which exceeds their capacity to store in the space allotted, the incarcerated person may request that they be permitted to store the excess personal legal material in a secure location designated by the managing officer for such purpose.

   a. A staff person designated by the managing officer shall review this request. A request for additional storage shall not be granted unless the volume of the incarcerated person's personal legal material is greater than one half of the incarcerated person's footlocker.

   b. Only personal legal material as defined in this policy may be stored in this manner. The incarcerated person shall provide a list of the active litigation upon request.

DRC 1362

| SUBJECT: Incarcerated Person Access to Court and Counsel (59-LEG-01) | PAGE__5__ OF __8__. |
|---|---|

    c.   Incarcerated people requesting additional space must first make reasonable efforts to reduce the amount of legal material in their possession. (e.g., reducing general material, such as stationery supplies, blank forms, photocopied materials, etc.; reducing personal legal material, such as duplicate documents, drafts, outdated or unnecessary correspondence, inactive case files, etc.). All excess material, including inactive case files, must be either mailed out of the institution at the incarcerated person's expense or otherwise disposed of by the incarcerated person.

6.    Additional space granted to an incarcerated person is subject to review every sixty (60) days by a staff person designated by the managing officer. Incarcerated people may exchange stored materials with those in their immediate possession once every thirty (30) days.

7.    All legal content generated or downloaded by incarcerated people via accessing the Incarcerated Person Citrix Network shall be retained and stored on the Incarcerated Person Citrix Network as provided in ODRC Policy 05-OIT-11, Incarcerated Person Access to Information Technology.

8.    Incarcerated people may receive a legal disc only if the managing officer/designee has provided prior approval, per OAC 5120-9-19, Printed Materials. A legal disc that has been sent to an incarcerated person without prior approval of the managing officer/designee shall be treated as contraband by the institution mailroom. The managing officer/designee shall determine the disposition pursuant to OAC 5120-9-17, Incoming Mail and 5120-9-55, Contraband.

9.    If a legal disc is sent with prior approval from the managing officer/designee, the legal disc shall be logged in the same manner as other legal mail, as provided in ODRC Policy 75-MAL-01, Incarcerated Population Mail.

10.    If the managing officer/designee approves the receipt of legal discs, the managing officer/designee shall establish procedures for the receipt, retention, viewing, and destruction of legal discs.

11.    The content of legal discs can be accessed and inspected for contraband only in the presence of the incarcerated person.

**F.   Incarcerated Person Legal Assistance**

1.    Incarcerated people are permitted to assist one another in the preparation and filing of legal documents or other legal matters. General population incarcerated people should generally be permitted to assist each other in common areas such as the library, dayroom, etc.

2.    Although incarcerated people may receive assistance from other incarcerated people, this privilege is not without limitation:

    a.   Incarcerated people do not have a right either to receive assistance from a specific incarcerated person or to aid a specific incarcerated person.

DRC 1362

| SUBJECT: Incarcerated Person Access to Court and Counsel (59-LEG-01) | PAGE 6 OF 8 |
| --- | --- |

b. Managing officers/designees can impose reasonable time, manner, and place restrictions on the access incarcerated people have with each other even though such restrictions may have an impact on their ability to assist one another. Such restrictions must be based on a legitimate interest in maintaining the good order and discipline of the institution, institutional security, and the personal safety of incarcerated people and staff. In considering time, manner, and place restrictions, institutions shall consider factors such as the housing assignments, custody level, and separations, etc.

c. Managing officers/designees may, in their discretion, approve special or individualized arrangements for incarcerated people to assist one another where a need has been demonstrated and is otherwise appropriate.

d. The fact that one incarcerated person is assisting another does not entitle such incarcerated person to maintain possession of the legal materials of another incarcerated person. Incarcerated people may maintain possession of their own legal materials as provided above in subsection VI.E.

3. No incarcerated person law clerk, library assistant, or any other incarcerated person shall, in any manner, trade, exchange or deal their assistance with legal matters to another incarcerated person. The institution shall prominently display a notice in the law library, and in either the incarcerated person handbook, or orientation materials, which states: "It is a violation of institutional rules for incarcerated people to require payment of any kind for providing legal assistance. No incarcerated people shall be required to pay or deal for legal services. If you or someone you know has been asked to pay or deal for legal assistance, please notify your unit manager or the law librarian."

4. No incarcerated people shall hold themselves out in any manner as a paralegal or an attorney at law or as authorized to practice law in any capacity.

a. No incarcerated people shall use the words "lawyer," "attorney at law," "counselor at law," "law," "law office," "esquire," or other equivalent words in connection with their own name, either in writing or orally, to induce others to believe that they are an attorney.

b. Any incarcerated person who violates subsection VI.F.4.a of this policy may be issued a conduct report for giving false information.

G. **Communication with Attorneys**

1. Legal mail, including incarcerated person mail to and from attorneys, shall be handled pursuant to OAC 5120-9-17 - Incoming Mail, 5120-9-18 - Outgoing Mail, and ODRC Policy 75-MAL-03 – Incarcerated Population Legal Mail.  Letters to/from staff members of the ODRC do not qualify as legal mail under this provision.

2. Attorneys shall be permitted to visit incarcerated people under the procedures set forth in OAC 5120-9-20, Visits by Attorneys and Inmate Access to Legal Services. Attorney visits shall take place in a room designated for that purpose where they can talk in private but be subject to visual observation.

DRC 1362

| SUBJECT: Incarcerated Person Access to Court and Counsel (59-LEG-01) | PAGE___7___ OF ___8___ |
|---|---|

3. An attorney may request to confer with their client by telephone when there is not enough time for the attorney to either correspond with or personally visit the incarcerated person due to the circumstances of the incarcerated person's litigation. Such requests shall be directed to the managing officer, or the person designated by the managing officer. Such conversations between the incarcerated person and the attorney shall be considered confidential; the same as in-person visits. These visits may be observed visually but shall not be observed aurally.

4. Incarcerated people may contact attorneys by telephones placed in the institution for general incarcerated person use; however, because calls from such phones may be monitored and/or recorded, these phones should not be used to discuss confidential attorney/client matters.

**H.  Communication with Attorneys at Privately Operated Prisons**

1. In the case of a state correctional institution that is privately operated and managed pursuant to Ohio Revised Code (ORC) section 9.06, if normal meeting locations for attorneys and their incarcerated person/resident clients are in areas where video cameras are present, the managing officer shall establish local procedures for accommodating an attorney request for a camera-free meeting area unless:

   a. Doing so would violate requirements of the ODRC as set forth in its administrative rules and policies,

   b. Doing so would interfere with the secure, safe, and orderly operation of the facility; or

   c. Doing so would endanger the security or safety of any person.

2. The managing officer of a state correctional institution that is privately operated and managed pursuant to ORC section 9.06 may limit the number of simultaneous camera-free meetings and require advance scheduling of camera-free meeting spaces by visiting attorneys to ensure the orderly operation of the facility is not disrupted.

**I.  Certified Mail**

1. Incarcerated people shall be permitted to send certified mail. Procedures for sending and receiving certified mail are contained in ODRC Policies 75-MAL-01, Incarcerated Population Mail and 75-MAL-03, Incarcerated Population Legal Mail.

**Attachments:**

| Appendix A | Minimum Required Legal Materials List |
|---|---|
| Appendix B | Minimum Required Materials for Legal Kits |

DRC 1362

SUBJECT: Incarcerated Person Access to Court and Counsel (59-LEG-01)     PAGE____8____ OF ___8___.

## Referenced ODRC Policies:

| | |
|---|---|
| 03-OVS-01 | Crime Victim Services |
| 05-OIT-11 | Incarcerated Individual Access to Information Technology |
| 61-PRP-01 | Personal Property |
| 75-MAL-01 | Incarcerated Population Mail |
| 75-MAL-03 | Incarcerated Population Legal Mail |

## Referenced Forms:

Indigent Kit Log          DRC1005

DRC 1362

APPENDIX A
SUPPLEMENTAL LEGAL MATERIALS

I.  Soft-Cover Printed Materials

    A.  <u>Ohio Criminal Law Handbook, Anderson Pub.</u>  Paperback contains compilation of criminal and related statutes, procedural rules, and other materials.

II.  Other Materials by Subject Matter:

    A.  Legal Research:

       <u>Legal Research in A Nutshell</u>, West Pub.

    B.  Criminal Law, Practice, and Procedure

       1.  General materials:

          a.  <u>Complete Manual of Criminal Forms</u>
          b.  <u>Criminal Procedure in a Nutshell</u>, West Pub.
          c.  <u>Post Conviction Remedies</u>, by Larry Yackle, Clark Boardman Callaghan, West Pub.

       2.  Ohio Law:

          a.  <u>Ohio Criminal Law</u>, Katz & Giannelli, West Pub.

    C.  Conditions of Confinement

       1.  Law of Sentencing and Corrections in a Nutshell, West Pub.

    D.  Foreign Nationals

       1.  Foreign Consular Offices in the United States (available from the Superintendent of Documents, U.S. Government Printing Office, Washington, D.C. 20402)

    E.  Legal Directory: Ohio Legal Directory, published annually by Legal Directories Publishing

## APPENDIX B

### MINIMUM REQUIRED MATERIALS FOR LEGAL KITS

1.     Two (2) large manila envelopes, 10" x 15"

2.     One (1) black ink pen

3.     Five sheets of carbon paper, 8-1/2" x 11" or, in lieu of carbon paper, an institution may: (a) allow the incarcerated person to have a total of twenty (20) copies made free of charge or (b) provide the incarcerated person with a copy card or cards that would allow them to make twenty (20) copies free of charge.

4.     Forty (40) sheets of white bond or copy paper, 8-1/2" x 11".

5.     One (1) 8-1/2" x 11" white writing-paper tablet.

 **Department of Rehabilitation & Correction**

# Conduct Report

| | | |
|---|---|---|
| **Name:** THOMAS, SHAWN | **Number:** A561064 | **Institution:** RICI |
| **Case Number:** RICI-24-000808 | ▓▓▓▓▓▓▓▓▓▓ | **Time of Violation:** 01:20 PM |
| **Location of Violation:** Library | | **Lock:** H4/B/0003 |

| Charged Rules | Rule Description |
|---|---|
| 5.2 | Disobedience of a direct order. |

**Supporting Facts (Describe what occurred and how the inmate violated the rule[s]):**

On the above date and time another inmate came to my office to pick up his legal work from the law computers that Thomas 561-064 had been helping him with. Thomas did not have permission to assist this inmate as the posted rules and DRC policy states hanging in the law library. Thomas knows the rules because he has been told several times by myself and Mr. Smith the Principal, Thomas has been previously restricted from the library by Mr. Smith for 14 days for the same situation. Inmates must have permission from a librarian and both inmates must sign an agreement form with a librarian.

Is this Conduct Report being written on behalf of another ?  Yes ☐  No ☑

Does the Charging Official wish to have input into the disciplinary proceedings?  Yes ☑  No ☐

| Electronic Signature of Charging Official : M JOHNSTON | Shift: varies | Days Off: S/M |
|---|---|---|

A copy of this conduct report was served upon the above-named inmate on: February, 02, 2024, at 11:32 AM

**Staff Electronic Signature:** M KENNEDY

I acknowledge receipt of the conduct report on the above stated date and time:

| Inmate Signature: _Thomas_ | Number: A561064 |
|---|---|

Notification to inmate: a conviction could result in loss of earned credit and 201 additional hearing.

DRC 4018 (Rev 08/2023)

PLAINTIFF'S EXHIBIT m



**Department of
Rehabilitation
& Correction**

# Conduct Report

| Name: THOMAS, SHAWN | Number: A561064 | Institution: RICI |
|---|---|---|
| Case Number: RICI-24-007226 | Date of Violation: 07/31/2024 | Time of Violation: 06:55 PM |
| Location of Violation: Library | | Lock: H2/B/0063 |

| Charged Rules | Rule Description |
|---|---|
| 5.2 | Disobedience of a direct order. |
| 11.2 | Dealing, conducting, facilitating, or participating in any transaction, occurring in whole or in part, within an institution, or involving any person for which payment of any kind is made, promised, or expected. |
| 16.2 | Attempting to commit; aiding another incarcerated person in the commission of; soliciting another to commit; or entering into an agreement with another to commit any of the above acts. |
| 16.3 | Any violation of any published institutional rules, regulations or procedures. |

**Supporting Facts (Describe what occurred and how the inmate violated the rule[s]):**

Inmate Phillips 826-273 turned in a cash slip to print his legal documents yesterday 8/5/24, to be printed this morning 8/6/24. Inmates are required to sign into the law library when working on their documents AND inmates are not allowed to do each other's legal work unless discussing it with one of the librarians first. I, Ervin, checked to see if Inmate Phillips signed into the law library when the document was edited (7/31/24 at 6:55pm), but found that Inmate Thomas 561-064 was signed into the computer instead. Inmate Thomas has been given multiple direct orders and conduct reports about not working on other inmate's legal work when they are not present, unless notifying the librarians. Inmate Thomas has ignored this direct order, violated the rules posted throughout the law library, and solicited Inmate Phillips into violating the posted rules as well.

Is this Conduct Report being written on behalf of another ?    Yes ☐    No ☑

Does the Charging Official wish to have input into the disciplinary proceedings?    Yes ☐    No ☑

| Electronic Signature of Charging Official : J Ervin | Shift: Varies | Days Off: Friday, Saturday |
|---|---|---|

A copy of this conduct report was served upon the above-named inmate on: August, 08, 2024, at 12:33 PM

| Staff Electronic Signature:  S BECHTLER |
|---|

I acknowledge receipt of the conduct report on the above stated date and time:

| Inmate Signature: | Number: A561064 |
|---|---|

PLAINTIFF'S EXHIBIT

N

Notification to Inmate: a conviction could result in loss of earned credit and 201 additional hearing.