**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SHAWN THOMAS, | ) | Case No. 1:25-cv-1704 |
| | ) | |
| Plaintiff, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | Jonathan D. Greenberg |
| DEVIN KEITH, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## OPINION AND ORDER

Plaintiff Shawn Thomas, an inmate representing himself, brings this action
under Section 1983 for alleged constitutional violations against ten staff members of
the Richland Correctional Institution.  Mr. Thomas asserts eight claims based on
multiple events that occurred at different times over several months.  Defendants
move to dismiss and sever certain claims without prejudice and to dismiss another
with prejudice.  For the following reasons, the Court **GRANTS** that motion.

## STATEMENT OF FACTS

Taking the facts alleged in the complaint as true and construing them in
Plaintiff's favor, as the Court must in the current procedural posture, Plaintiff Shawn
Thomas bases his claims on the following events.

### A.     The Alleged Pepper Spray Incident

On August 10, 2023, Mr. Thomas claims that he was taken to an observation
cell at Richland Correctional Institution after learning that his brother died in a
motorcycle accident.  (ECF No. 1, ¶¶ 1 & n.1, PageID #5–6.)  He was placed there at

the direction of "Mental Health Dr. Mr. Michaels" (who is not a named Defendant) because of his "mental state of mind" after learning of his brother's death. (*Id.*) Dr. Michaels told Mr. Thomas to go to the observation cell and "cry himself to sleep" because he was not sleeping well in normal housing within the institution. (*Id.*, ¶¶ 2–4, PageID #6.) Mr. Thomas agreed and went to the observation cell for the night "willingly." (*Id.*, ¶ 4.)

According to Mr. Thomas, the observation cells are "completely 'see through' [or] 'clear.'" (*Id.*, ¶ 5.) Because he has been an inmate at Richland Correctional for over ten years and knows all the staff members and many of the inmates, Mr. Thomas did not want anyone to see him crying in the cell. (*Id.*, ¶ 7, PageID #6.) Therefore, Mr. Thomas used the suicide blankets to make himself a bed on the shower floor within the cell. (*Id.*, ¶¶ 6–8, PageID # 6–7.) There, he was able to cry himself to sleep out of view of others. (*Id.*, ¶ 9, PageID #7.)

Although it is unclear whether the following events were part of the same incident, Mr. Thomas alleges that the following events occurring during his time in the observation cell. (*Id.*, ¶¶ 10–58, PageID #7–15.)

### A.1.  Removal from the Cell and Pepper Spray Incident

Shortly after falling asleep on the shower floor in the observation cell, Mr. Thomas was awakened when Officer John Doe 1 grabbed his "right foot/leg and forcefully" dragged him across the "cell floor/shower floor." (*Id.*, ¶ 11, PageID #7.) Mr. Thomas claims that Officer Devin Keith helped Officer John Doe 1 remove him from the observation cell. (*Id.*, ¶ 12.) Also, Mr. Thomas appears to claim that when the officers awakened him, they simultaneously sprayed him with "Oleo Capsicum

2

Resin ('OC Pepper Spray')."  (*Id.*, ¶ 15, PageID #7–8.)  He states that he was "unconscious and sleeping on the floor when this OC Pepper Spray was deployed." (*Id.*, ¶ 27, PageID #10.)  It appears that Mr. Thomas claims that officers simultaneously deployed the OC pepper spray while they dragged him across the floor and out of the observation cell.  (*Id.*, ¶ 10, PageID #7.)

As the officers dragged Mr. Thomas from the cell, he claims that he "smacked the right side of his face" on the two-inch water stopper in the shower, which resulted in severe bruising and a headache.  (*Id.*)  After being removed from the cell, Officer John Doe 1 and Officer Keith allegedly "forcefully yanked" Mr. Thomas to his feet and moved him to the hallway of the segregation unit.  (*Id.*, ¶ 13.)  There, the officers allegedly "forcefully slammed" Mr. Thomas against the wall and "cuffed" him "extremely tightly."  (*Id.*, ¶¶ 12–13.)  Then, the officers escorted Mr. Thomas to a holding cell.  (*Id.*, ¶¶ 13–14 & 19, PageID #6 & #8.)  During this incident, Mr. Thomas alleges that the officers "threatened that if he told or said anything" that "things would get much worse for him."  (*Id.*, ¶ 13, PageID #6.)

After ten minutes in the holding cell, Mr. Thomas alleges that Officer John Doe 2 escorted him back to the observation cell, where he spent the night.  (*Id.*, ¶¶ 13–14 & 19, PageID #6 & #8.)  Mr. Thomas alleges that the cell was not decontaminated following use of the OC pepper spray and that neither was he.  (*Id.*, ¶¶ 20 & 28, PageID #8 & #10.)  Mr. Thomas remained in the observation cell for the duration of the night then transferred to a different cell in the segregation unit the

3

following afternoon, where he remained until September 5, 2023.  (*Id.*, ¶ 31, PageID #10.)

### A.2.  Segregation

From August 10, 2023 to August 21, 2023, Mr. Thomas allegedly stayed in the clothes in which he was pepper sprayed, irritating his skin and affecting his cellmate. (*Id.*, ¶¶ 34–36, PageID #11.)  On August 21, 2023, Officer Fields (not a named Defendant) was informed of Mr. Thomas's condition and returned him to his cell with a "down-range pack-up (clothes and hygiene)."  (*Id.*, ¶ 32, PageID #10–11.)  During his time in segregation, Mr. Thomas claims that he missed "Yard Day," an annual celebration at Richland Correctional Institution.  (*Id.*, ¶ 38, PageID #12.)  Later, on September 3, 2023, he missed a celebration of life honoring his deceased younger brother.  (*Id.*, ¶ 39.)

Taken together, Mr. Thomas claims that the alleged assault took place on August 10, 2023 "and lasted until September 5, 2023," his last day in the segregation unit. (*Id.*, ¶ 40.)  According to Mr. Thomas, Lt. Kevin Sipes was the supervising officer of the Segregation Unit on August 10, 2023 and allowed the pepper spray incident to occur.  (*Id.*, ¶¶ 3 & 14, PageID #5 & #50.)

### A.3.  Complaints and Appeals

Personnel at Richland Correctional Institution wrote a conduct report on Mr. Thomas following the incident on August 10, 2023 for physical resistance and disobedience to a direct order.  (*Id.*, ¶¶ 41–46, PageID #12–13, *see also id.*, ¶ 8, PageID #51–52.)  In response, Mr. Thomas filed an informal complaint resolution form on August 17, 2023.  (*Id.*, ¶ 54, PageID #15.)  On an unspecified date, a Rules

4

and Infractions Board found Mr. Thomas guilty of both physical resistance and disobedience to a direct order. (*Id.*, ¶ 8, PageID #51–52.)

In the aftermath of the August 10, 2023 incident, Mr. Thomas filed four appeals challenging the "R.I.B. Guilty Findings that were issued against [him]." (*Id.*) But according to the complaint, Lt. Sipes allegedly threw away Mr. Thomas's appeals. (*Id.*, ¶ 10, PageID #52).  Lt. Sipes did this because he allegedly knew that, if Mr. Thomas's appeals failed, his security level would be raised, and he would be transferred out of Richland Correctional Institution to a higher security penitentiary. (*Id.*, ¶ 11.)

### B.     Retaliation for Informal Complaint Resolution Forms

Mr. Thomas alleges that he filed multiple informal complaint resolution forms against Officer Stephen Mandusic for various forms of misconduct. (*Id.*, ¶ 1, PageID #17.)  "[A]s early as March 17, 2023," Mr. Thomas asserts that Officer Mandusic or his partner, "Dean," (who is not a named Defendant) would "torment" Mr. Thomas in response to his informal complaint resolution forms. (*Id.*, ¶ 3, PageID #18.)  In doing so, Officer Mandusic either wrote conduct reports himself or had coworkers in the lower housing unit do it. (*Id.*, ¶ 5.)  Plaintiff alleges that Officer Mandusic only wrote the conduct reports because Mr. Thomas wrote informal complaint resolution forms against him. (*Id.*, ¶ 8, PageID #19.)  This back-and-forth between Mr. Thomas and Officer Mandusic allegedly lasted two to three months. (*Id.*, ¶ 12, PageID #20.)

### C.     Segregation Unit

On April 27, 2023, Officer Debra Shrader handcuffed Mr. Thomas and escorted him to the segregation unit. (*Id.*, ¶¶ 1–7, PageID #22.)  Mr. Thomas learned that

Officer April Robinson, the lower housing unit manager, decided to place him in the segregation unit to investigate the informal complaint resolution forms that Mr. Thomas filed against Officer Mandusic.  (*Id.*, ¶ 12, PageID #23, *see also id.*, ¶ 4, PageID #27.)  Mr. Thomas alleges that Officer Robinson told him that he would never return to the lower housing unit.  (*Id.*, ¶ 5, PageID #27.)

While Mr. Thomas was in the segregation unit, corrections staff wrote around eight to ten conduct reports against him.  (*Id.*, ¶ 14, PageID #23.)  Then, Officer Shrader conducted hearings based on these conduct reports and found Mr. Thomas guilty.  (*Id.*)  Because of Officer Shrader and Officer Robinson's conduct, Mr. Thomas punched the wall and door of his cell, inflicting injuries to his hands.  (*Id.*, ¶ 9, PageID #27–28.)

Mr. Thomas stayed in the segregation unit from April 27, 2023 to May 2, 2023.  (*Id.*, ¶ 12, PageID #23.)  During that time, Mr. Thomas shared a cell with a high-security level three inmate, even though Mr. Thomas was a lower-security level two inmate.  (*Id.*, ¶¶ 7–8, PageID #27.)

When Mr. Thomas was released from the segregation unit, he was placed in a different lower housing unit.  (*Id.*, ¶ 15, PageID #23.)  Mr. Thomas learned from Officer Shrader that no housing unit wanted to accept Mr. Thomas due to his reputation as a "High Filer Litigator/Jailhouse Lawyer."  (*Id.*, ¶ 22, PageID #24.)

**D.     Plaintiff's Legal Box**

On June 27, 2023, Officer Deanna Reinhold (incorrectly spelled as Rineholdt on the docket) called for Mr. Thomas's attention.  (*Id.*, ¶ 1, PageID #30.) Mr. Thomas ignored her.  (*Id.*)  Then, Officer Reinhold ordered two unknown inmates to remove

6

Mr. Thomas's legal box containing his filings from the vault in her office and throw the box onto the ground in the parking lot near his old lower housing unit. (*Id.*, ¶¶ 2–4, PageID #31.) Mr. Thomas alleges that Officer Reinhold's conduct retaliated against him for informal complaint resolution forms against other officials in his old housing unit. (*Id.*, ¶ 10, PageID #32.)

### E. Additional Library Incidents

On July 1, 2023, Mr. Thomas was suspended from the library facility for fourteen days. (*Id.*, ¶ 21, PageID #39.) On July 6, 2023, Mr. Thomas was called to Officer Dougals Smith's office. (*Id.*, ¶ 2, PageID #35.) At the time of the alleged conduct, Officer Smith was a librarian at Richland Correctional Institute. (*Id.*, ¶ 12, PageID #5.) Officer Smith wrote Mr. Thomas several conduct reports for assisting other inmates with their legal work. (*Id.*, ¶ 3, PageID #35.) Then, Officer Smith threatened to suspend Mr. Thomas from the library if he continued to assist other inmates. (*Id.*, ¶ 5, PageID #5.)

On an unspecified date, Mr. Thomas alleges that Officer Smith and Officer Monetta Johnston (Ervin) read and deleted several of Mr. Thomas's filings from computers in the library. (*Id.*, ¶¶ 19 & 47, PageID #39 & #47.) Officer Johnston (Ervin) was another librarian at the time of the conduct alleged in the complaint. (*Id.*, ¶ 13, PageID #5.) Mr. Thomas claims that the files were deleted to deter him from filing both internal complaints and the present lawsuit. (*Id.*, ¶ 19, PageID #39.)

On August 7, 2023, Plaintiff wrote informal complaint resolution forms on computers in the law library because he did not have access to paper forms or a tablet. (*Id.*, ¶ 23.) On the same date, Officer Johnston (Ervin) advised Mr. Thomas to stop

recreating documents. (*Id.*, ¶ 25, PageID #40.) On August 8, 2023, Mr. Thomas received a conduct report for his actions in the library. (*Id.*, ¶ 22, PageID #39.) Then, on September 6, 2023, Mr. Thomas filed a kite to a supervisory officer expressing his displeasure with Officer Smith. (*Id.*, ¶ 44, PageID #45.) This was his third attempt at filing an informal complaint resolution forms against Mr. Smith. (*Id.*)

On an unspecified date, Officer Johnston (Ervin) ordered an officer in Mr. Thomas's housing unit to search his bunk to locate missing books. (*Id.*, ¶ 32, PageID #41–42.) This led to a confrontation between Mr. Thomas and Officer Johnston (Ervin), resulting in another conduct report. (*Id.*, ¶ 33, PageID #42.)

On January 27, 2024, Mr. Thomas entered the library to ask Officer Johnston (Ervin) why she informed unit officers that Mr. Thomas had taken books from the library. (*Id.*, ¶ 36, PageID #43.) Mr. Thomas was subsequently written a conduct report. (*Id.*, ¶ 37, PageID #42.) Later that day, Mr. Thomas returned to the library to pick up materials and received another conduct report for assisting another inmate, presumably with legal filings. (*Id.*, ¶ 38, PageID #43.) Mr. Thomas was threatened with suspension if he continued to file legal documents without her approval. (*Id.*, ¶ 39.)

On July 31, 2024, Mr. Thomas was the subject of another conduct report for helping a fellow inmate with legal preparation. (*Id.*, ¶ 49, PageID #46–47.) Mr. Thomas was given commissary and package restrictions because of the conduct reports written against him. (*Id.*, ¶ 50, PageID #47.)

## STATEMENT OF THE CASE

On July 28, 2025, Plaintiff Shawn Thomas filed a complaint against several staff members of the Richland Correctional Institution, and the case was docketed on August 15, 2025.  (ECF No. 1, ¶¶ 5–14, PageID #4–5.)  In the complaint, Plaintiff brings several claims against multiple individuals for separate instances spanning several months.  Plaintiff alleges that Defendant Devin Keith, during the alleged assault, used excessive force in violation of the Eighth Amendment right to be free from cruel and unusual punishment.  (*Id.*, ¶ 3, PageID #54.)  Plaintiff asserts that Defendant Kevin Sipes then retaliated against him by deliberately withholding his clothing, hygiene, and stationary materials while he was housed in the segregation unit.  (*Id.*, ¶ 10, PageID #57–58.)  Additionally, Plaintiff asserts that Defendant Kevin Sipes discarded Plaintiff's four appeals challenging the R.I.B. convictions.  (*Id.*)

Plaintiff also brings several claims regarding retaliation and his use of informal complaint resolution forms. He asserts that Defendant Stephen Mandusic, along with Defendant Debra Shrader, Defendant April Robinson, and Defendant Deanna Reinhold retaliated against him because of his complaints.  (*Id.*, ¶ 4, PageID #55.)  Likewise, Plaintiff asserts that Defendant Shrader retaliated against him "in connection with [Defendant] Mandusic's illicit ill-mannered behavior" and for his use of ICRFs.  (*Id.*, ¶ 5, PageID #55.)  Finally, Plaintiff asserts that Defendant Robinson retaliated against him by segregating him in for his use of informal complaint resolution forms.  (*Id.*, ¶ 6, PageID #55.)

Plaintiff's other claims largely relate to his ability to litigate.  He asserts that Defendant Deanna Reinhold retaliated against him by "throwing his protect[ed] legal material . . .  onto the pavement of the prison yards" and for his use of informal complaint resolution forms.  (*Id.*, ¶ 7, PageID #55–56.)  Also, he asserts that Defendant Douglas Smith and Defendant Monetta Johnston (Ervin) "collectively suspended [him] from litigating in the law library" and for Plaintiff's use of informal complaint resolution forms.  (*Id.*, ¶ 8, PageID #56.)  Plaintiff's legal filings were allegedly deleted from the law library computers "after [Defendant] Johnston and [Defendant] Smith collectively caught on to what [Plaintiff] was drafting against them and their staff members."  (*Id.*, ¶ 9, PageID #56–57.)  Defendant Johnston (Ervin) also allegedly retaliated against Plaintiff by writing conduct reports "sadistically and maliciously," causing Plaintiff to be subject to several restrictions. (*Id.*)

Plaintiff filed motions for appointment of counsel (ECF No. 3), for a control number (ECF No 4), and twice for leave to amend his complaint (ECF No. 5, ECF No. 8), which the Magistrate Judge denied (ECF No. 20).  Defendants move to dismiss.  (ECF No. 10).

Plaintiff moves join parties and claims in his complaint (ECF No. 14), and Defendants move to that motion strike (ECF No. 17).  Also, Plaintiff moves to strike Defendants' reply in support of their motion to dismiss (ECF No. 16), or, in the alternative, be given the opportunity to respond to file a surreply (ECF No. 21). Additionally, Defendants move to strike Plaintiff's motion to Strike.  (ECF No. 22.)

In total, there are now five pending motions before the Court:  (1) Defendants' motion to dismiss (ECF No. 10); (2) Plaintiff's motion for joinder (ECF No. 14); (3 and 4) Defendants' two motions to strike (ECF No. 17; ECF 22); and (5) Plaintiff's motion to strike (ECF No. 21).

**MOTIONS TO STRIKE**

Before turning to the substantive motions, the Court addresses the various motions to strike.  Rule 12(f) allows the Court to strike "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f). Courts disfavor motions to strike and should grant such motions "only where the allegations are clearly immaterial to the controversy or would prejudice the movant." *Frisby v. Keith D. Weiner & Assocs. Co., LPA*, 669 F. Supp. 2d 863, 865 (N.D. Ohio 2009) (citation omitted).  The Court should grant them "only when the pleading to be stricken has no possible relation to the controversy."  *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953).

### A.    Defendants' Motion to Strike

Plaintiff's motion for joinder is redundant.  (ECF No. 14.)  Although Rule 20 allows a plaintiff to join multiple defendants in the same lawsuit, *see* Fed. R. Civ. P. 20(a)(2), Plaintiff's motion seeks to join Defendants already named in the lawsuit. Specifically, Plaintiff "moves this Honorable Court to JOIN [ALL] Defendants and Claims and consolidate this case as One (1)."  (ECF No. 14, PageID #389.)  However, Rule 20 does not allow for such joinder—a plaintiff cannot join defendants already part of the lawsuit.  Because Plaintiff's motion is redundant and improper, the Court

11

**GRANTS** Defendants' motion to strike (ECF No. 17) and **STRIKES** Plaintiff's motion (ECF No. 14).

### B.      Plaintiff's Motion to Strike

Further, Plaintiff attempts to strike Defendants' reply to his opposition to Defendants' motion to dismiss.  In doing so, he argues that Defendants' reply was a "sur-reply" that Defendants did not have leave to file.  (ECF No. 21, PageID #455.) In turn, Defendants move to strike Plaintiff's motion to strike arguing that they followed the Local Rules in filing their reply.  (ECF No. 22.)

Defendants' reply is not a sur-reply.  It was a reply that was filed in compliance with the Local Rules, which instruct that "the moving party may serve and file a reply memorandum in support of any dispositive motion within fourteen (14) days after service."  Local Rule 7.1(e).  Because Plaintiff's motion to strike attempts to strike a properly filed reply, the Court **DENIES** Plaintiff's motion to strike (ECF No. 21) and **DENIES AS MOOT** Defendants' motion to strike (ECF No. 22).

### JOINDER

Much of the outcome of this case depends on whether Plaintiff properly joined Defendants in his suit.  Accordingly, the Court begins by addressing this issue. Under Rule 20, defendants may be joined in one action if "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."  Fed. R. Civ. P. 20(a)(2).  However, where the claims are not sufficiently related, the court may sever any claim against a party.  Fed. R. Civ. P. 21; *see also Johari v. Ginther*,

No. 2:21-cv-4236, 2021 WL 4033163, at *1–2 (S.D. Ohio Sept. 3, 2021). "The permissive language of Rule 21 permits the district court broad discretion in determining whether or not actions should be severed." *Parchman v. SLM Corp.*, 896 F.3d 728, 733 (6th Cir. 2018) (citation omitted).

In determining whether to sever claims, courts consider several factors, including:

> (1)  whether the claims arise out of the same transaction or occurrence;
>
> (2)  whether the claims present some common questions of law or fact;
>
> (3)  whether the settlement of the claims or judicial economy would be facilitated;
>
> (4)  whether prejudice would be avoided if severance were granted; and
>
> (5)  whether different witnesses and documentary proof are required to separate claims.

*Id.* at 733 (citation omitted).

## A.    Same Transaction or Occurrence

In his first cause of action, Plaintiff asserts that Defendants Devin Keith, John Doe #1, and John Doe #2 violated his Eighth Amendment rights by removing Plaintiff from an observation cell and deploying OC spray on August 10, 2023. (ECF No. ¶¶ 1–58, PageID #5–15.) In Counts 2 through 6, Plaintiff asserts First Amendment retaliation and due process violation claims against Defendants Stephen Mandusic, Debra Shrader, April Robinson, Deanna Reinhold, Douglas Smith, and Monetta Johnston (Ervin). (*Id.*, PageID #17–54.)

13

Under Rule 20, "a 'case-specific inquiry' is utilized to determine whether the claims arise out of the same transaction or occurrence." *Reynolds v. Merck Sharp & Dohme Corp.*, No. 3:15-cv-397, 2016 WL 3090951, at *2, (N.D. Ohio June 2, 2016) (citation omitted).  "To determine whether claims arise out of the same transaction or occurrence, the Sixth Circuit evaluates whether there is a logical relationship between the claims." *Allstate Ins. Co. v. Electrolux Home Prods.*, No. 1:16-cv-1946, 2016 WL 6995271, at *2, (N.D. Ohio Nov. 30, 2016) (citing *LASA Per L'Industria Del Marmo Soceita Per Azioni of Lasa, Italy v. Alexander*, 414 F.2d 143, 147 (6th Cir. 1969)).  "[I]f the same issues of fact would determine both claims, they arise out of the same transaction or occurrence." *Wood v. Smith*, No. 2:24-cv-165, 2024 WL 2292020, at *11 (S.D. Ohio May 21, 2024) (quoting *LASA*, 414 F.2d at 151). "[B]ut if the proof of one claim would have no connection with the proof of the other, the claims do not arise out of the same transaction or occurrence." *CH Liquidation Ass'n Liquidation Trust v. Genesis Healthcare Sys.*, No. 1:18-cv-752, 2020 WL 2850283, at *2, (N.D. Ohio June 2, 2020) (citation omitted).

Here, Defendants argue that Plaintiff's Eight Amendment excessive force claim against Defendants Devin Keith, John Doe #1, and John Doe #2 do not arise out of the same transaction or occurrence, series of transactions or occurrences, or have any question of law or fact common to the remaining defendants and claims. (ECF No. 22, PageID #492, *see also* ECF No. 10, PageID #360.)  In Defendants' view, the retaliation claims are separate from the August 10, 2023 pepper spray incident.

14

### A.1.  Claims Against Defendants Stephen Mandusic, Debra Shrader, April Robinson, and Deanna Reinhold

Plaintiff appears to be arguing that the August 10, 2023 incident is part of the same transaction or occurrence as those against Defendants Mandusic, Shrader, Robinson, and Reinhold, because it was the culmination of the unrelated events dating back to "as early as March 17, 2023" that resulted in the pepper spray incident. (ECF No. 1, ¶ 3, PageID #18.)  But that is not enough.  The August 10, 2023 incident occurred in a different location, and at substantially different times than the actions giving rise to the other claims against the other defendants, perhaps excluding Defendant Sipes.  Additionally, Defendants Mandusic, Shrader, Robinson, and Reinhold were all staffed in a lower housing unit at Richland Correctional Institution, not the segregation unit where the pepper spray incident occurred.  (*Id.*, ¶¶ 8–11, PageID # 4–5.)  And units within Richland Correctional Institution are distinct and separate, further supporting that the incidents were not related.  Also, Plaintiff does not even allege that these Defendants were present at the time of the cell extraction and pepper spray incident.

However, Plaintiff attempts to link his conflicts with the lower housing staff to the pepper spray deployment by arguing that Defendants Devin Keith, John Doe #1, and John Doe #2 were aware of the conflicts in the housing unit and that their awareness of the conflicts was the basis of the pepper spray deployment.  (ECF No. 21, PageID #49.)  But the knowledge of Defendants Keith, John Doe #1, and John Doe #2 of Plaintiff's reputation and conflicts in the other unit does not make the

15

alleged instances of retaliation part of the same transaction or occurrence as the pepper spray incident.

Further, the claims against Defendants Mandusic, Shrader, Robinson, and Reinhold occurred months before the August 10, 2023 incident.  Plaintiff bases his claims for retaliation against Defendant Mandusic on conduct beginning "as early as March 17, 2023" and lasting around two to three months.  (*Id.*, ¶¶ 3 & 12, PageID #18 & #20.)  Likewise, Plaintiff bases his claims against Defendants Robinson and Schrader for their conduct from April 27, 2023 to May 2, 2024.  (*Id.*, ¶13, PageID #23.) And Plaintiff's claim against Defendant Reinhold is based on a single incident on June 27, 2023  (*Id.*, ¶ 1, PageID #30.)  Therefore, all these incidents occurred months before August 10, 2023 and were not part of the same transaction or occurrence.

### A.2.  Claims against Defendants Douglas Smith and Monetta Johnston (Ervin)

Plaintiff asserts that Defendants Smith and Johnston (Ervin) were the principal and librarian for the Richland Correctional Institution, respectively.  (*Id.*, ¶¶ 12–13, PageID #5.)  Plaintiff does not allege, and the parties do not dispute, that Defendants Smith and Johnston (Ervin) were not present during the pepper spray deployment in the segregation unit.  Instead, Plaintiffs bases his claims against these Defendants on his fourteen-day suspension from the library that commenced on or about July 1, 2023. (*Id.*, ¶ 9, PageID #56–57.)  Once again, this incident came several months before the August 10, 2023 pepper spray incident.

Additionally, several of Plaintiff's conduct reports that resulted in his suspension from the library were related to helping other inmates with their legal

16

work.  (*Id.*, ¶¶ 3, 38, PageID #35 & #43.)  Therefore, these incidents are legally and factually unrelated to the excessive force claim and are not part of the same transaction or occurrence.

*　　*　　*

For the foregoing reasons, the Court determines that the claims against Defendants Stephen Mandusic, Debra Shrader, April Robinson, Deanna Reinhold, Douglas Smith, and Monetta Johnston (Ervin) are not part of the same transaction or occurrence as the August 10, 2023 pepper spray incident.  Accordingly, Plaintiff improperly brings all his claims in a single complaint.

### B.    Misjoinder

Misjoinder is "not ground for dismissal of an action."  Fed. R. Civ. P. 21.  However, "the manner in which a trial court handles misjoinder lies within that court's sound discretion."  *Michaels Bldg. Co. v. Ameritrust Co., N.A.,* 848 F.2d 674, 682 (6th Cir. 1988) (citing 3A J. Moore and J. Lucas, Moore's Federal Practice ¶ 21.03, at 21–26 (1986)).  The array of options available to the Court include "dropping misjoined parties to the lawsuit without prejudice, . . . directing the first-named party to file an amended complaint after granting the motion to sever, dismissing all claims of other plaintiffs without prejudice, and directing those parties to file new, separate complaints within 30 days of granting the motion to severe."  *Billingsley v. Lincoln Electric Co.*, No. 1:21-CV-00944, 2022 WL 4599189 *2 (N.D. Ohio Sept. 30, 2022).

Because Plaintiff misjoined his claims against Defendants Stephen Mandusic, Debra Shrader, April Robinson, Deanna Reinhold, Douglas Smith, and Monetta

17

Johnston (Ervin) with his claim for violation of the Eighth Amendment against Devin Keith, John Doe #1, and John Doe #2, the Court **SEVERS** Counts 2 through 6 and **DISMISSES** them **WITHOUT PREJUDICE**.

### ANALYSIS

Under Rule 12(b)(6), a court may dismiss a complaint if it fails to state a claim on which a court may grant relief.  Fed. R. Civ. P. 12(b)(6).  A motion under Rule 12(b)(6) tests "the plaintiff's cause of action as stated in the complaint," and is "not a challenge to the plaintiff's factual allegations."  *Golden v. City of Columbus*, 404 F.3d 950, 958–59 (6th Cir. 2005).  A complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  To survive a motion to dismiss, a complaint must "raise a right to relief above the speculative level" into the "realm of plausible liability."  *Twombly*, 550 U.S. at 555, 557 n.5.

On a motion to dismiss, the Court construes factual allegations in the light most favorable to the plaintiff, accepts them as true, and draws all reasonable inferences in the plaintiff's favor.  *Wilburn v. United States*, 616 F. App'x 848, 852 (6th Cir. 2015) (citing *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)).  But a pleading must offer more than mere "label and conclusions," and "a formulaic recitation of the elements of a cause of action will not do."  *Iqbal*, 556 U.S. at 678

18

(quoting *Twombly*, 550 U.S. at 555).  Nor is a court required to accept "[c]onclusory allegations or legal conclusions masquerading as factual allegations."  *Eidson v. Tennessee Dep't of Child.'s Servs.*, 510 F.3d 631, 634 (6th Cir. 2007) (citing *Twombly*, 550 U.S. at 544).

Therefore, the Court must distinguish between "well-pled factual allegations," which must be treated as true, and "naked assertions," which need not be.  *Iqbal*, 556 U.S. at 678 (cleaned up); *see also, e.g.*, *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 375 (6th Cir. 2011) (determining that because some of the plaintiff's factual allegations were not well-pled, their conclusory nature disentitled them to the presumption of truth).  A plaintiff need not include detailed factual allegations, but must provide more than "an unadorned, the-Defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678.  Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Id.* at 678–79.

Although the pleadings and documents *pro se* litigants file are liberally construed and held to less stringent standards than the formal pleadings of lawyers, *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004), litigants who do not have a lawyer are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).  Even a *pro se* complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" to avoid dismissal.  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

## I.      Claims Against Defendant Kevin Sipes

To state a claim against a governmental official in his individual-capacity, "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights." *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002).  Absent proof of personal involvement, a Section 1983 plaintiff must, at minimum, "show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 2008).  However, "[a] supervisor cannot be held liable simply because he or she was charged with overseeing a subordinate who violated the constitutional rights of another." *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016).  In other words, a supervisor or other governmental official is not vicariously liable for the violations of a person's civil rights that another commits.  Further, "[a] supervisor's failure to act, without more, is insufficient to establish supervisory liability." *Hollis v. Erdos*, 480 F. Supp. 3d 823, 833 (S.D. Ohio 2020) (citing *Peatross*, 818 F.3d at 241).

Plaintiff asserts three claims against Defendant Sipes, the Court addresses each in turn.

### I.A.   Pepper Spray Deployment

First, Plaintiff asserts that the pepper spray deployment occurred under the supervision of Lt. Sipes.  (ECF No. 1, ¶ 3, PageID #50.)  However, Plaintiff does not plead facts alleging that Lt. Sipes was personally involved.  Failure to make such allegations shifts this claim into the realm of supervisory liability.  Although Plaintiff asserts that Lt. Sipes is responsible for the security and safety of prisoners who stay

20

in the segregation unit (*id.*, ¶ 2, PageID #50), nothing in the complaint alleges that Lt. Sipes "implicitly authorized, approved or knowingly acquiesced" to the other officer's deployment of the pepper spray. *Bellamy v. Bradley*, 729 F.2d at 421. To hold Lt. Sipes liable on the facts alleged would make him vicariously liable for other's alleged violations, which the law does not authorize. Accordingly, Plaintiff fails to state a claim against Defendant Sipes for the pepper spray incident.

### I.B.    Failure to Decontaminate

Second, Plaintiff asserts that Lt. Sipes deliberately withheld clean clothes and hygiene products from him and "tossed Thomas into a cell without ever decontaminating [him] first," leaving Plaintiff contaminated for twelve days. (*Id.*, ¶ 10, PageID #58.) Again, these allegations do not implicate Lt. Sipes directly and fail to plead supervisory liability. Nowhere in the complaint does Plaintiff allege that Lt. Sipes had anything to do with other officers' failure to decontaminate Mr. Thomas. And "failure to act" is not enough. *Hollis*, 480 F. Supp. 3d at 833. Accordingly, Plaintiff fails to state a claim against Lt. Sipes for failure to decontaminate him after the pepper spray incident.

### I.C.    Appeals Destruction

Third, Plaintiff asserts that Lt. Sipes obstructed Plaintiff's efforts to exhaust his grievances by "interfering and throwing away or dismissing the Plaintiff's Appeals challenging Plaintiff's R.I.B. convictions." (*Id.*, ¶ 11, PageID #58.) Taking these allegations at face value, Plaintiff makes no allegation that these actions on the part of Lt. Sipes prevented him from taking the additional steps necessary to exhaust

his claims.  Ohio Admin. Code § 5120–9–31(J)(3).  Therefore, these actions did not frustrate Plaintiff's effort to exhaust his claims.

*     *     *

Because Plaintiff fails to state a claim for any of the three allegations against Lt. Sipes, the Court **DISMISSES** the claims against Lt. Sipes **WITH PREJUDICE**.

## II.     Eighth Amendment Claim

Defendants do not argue that the excessive force claim should be dismissed. (ECF No. 10, PageID #361.)  In fact, Defendants affirmatively argue that Plaintiff's Eight Amendment excessive force claim against Defendants Keith, John Doe #1, and John Doe #2 should proceed.  (*Id.*)  Accordingly, the Court the Eighth Amendment claim proceeds against Defendants Keith, John Doe #1, and John Doe #2.

However, Defendants assert that the Eleventh Amendment bars Plaintiff's claims against these Defendants in their official capacities.  (ECF No. 10, PageID #361–62.)  Claims against defendants in their official capacities amount to a claim against the State.  *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985). In other words, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also Doe v. Claiborne Cnty.*, 103 F.3d 495, 509 (6th Cir. 1996).  As a result, "there is no longer a need to bring official-capacity claims against local government officials."  *Graham*, 473 U.S. at 167 n.14.  Because Defendants are State employees and Ohio has not waived its sovereign immunity, the Court **DISMISSES** Plaintiffs' official-capacity claims.

22

## CONCLUSION

For the forgoing reasons, the Court **GRANTS** Defendants' motion to strike (ECF No. 17), **STRIKES** Plaintiff's motion for joinder (ECF No. 14), **DENIES** Plaintiff's motion to strike (ECF No. 21), and **DENIES AS MOOT** Defendants' motion to Strike (ECF No. 22).  Further, the Court **GRANTS** Defendants' motion to dismiss (ECF No. 10).  In doing so, the Court **SEVERS** Counts 2 through 6 against Defendants Stephen Mandusic, Debra Shrader, April Robinson, Deanna Reinhold, Douglas Smith, and Monetta Johnston (Ervin) and **DISMISSES** them **WITHOUT PREJUDICE**.  The Court **DISMISSES WITH PREJUDICE** Count 7 against Defendant Kevin Sipes.  This disposition allows Plaintiff's claim for excessive force in violation of the Eighth Amendment to proceed against Defendants Devin Keith, John Doe #1, and John Doe #2 in their individual capacities, but the Court **DISMISSES** the claim against them in their official capacities.

**SO ORDERED.**

Dated:  July 31, 2026

J. Philip Calabrese
United States District Judge
Northern District of Ohio

23